[Civil No. 3697.   Filed June 18, 1937.]

[69 Pac. (2d) 242.]

H. R. SISK, Appellant, v. Y. C. WHITE, as Superintendent of Banks of the State of Arizona and Receiver of NOGALES BUILDING AND LOAN ASSOCIATION, an Insolvent Building and Loan Association, Appellee.

Mr. James V. Robins, for Appellant.

Mr. Joe Conway, Attorney General and Mr. Edward P. Cline, his Assistant, for Appellee.

LOCKWOOD, J.—This is an action for a declaratory judgment by H. R. Sisk, hereinafter called plaintiff, against Y. C. White, hereinafter called defendant, as Superintendent of Banks of the State of Arizona, and *ex officio* receiver of Nogales Building & Loan Association, an insolvent building and loan association. A general demurrer was interposed to the complaint and sustained by the court, and the plaintiff having elected to stand upon his complaint, judgment was rendered in favor of defendant, whereupon this appeal was taken.

The only question before us is the sufficiency of the complaint. In considering this, we must, of course, assume that all the material facts well pleaded in the complaint are, for the purpose of the demurrer, conceded to be true. We state them as follows: The Nogales Building & Loan Association, hereinafter called the company, was a corporation organized under the laws of the State of Arizona. On May 23, 1934, it was adjudged insolvent by the superior court, and Y. C. White, Superintendent of Banks of the state, was appointed its receiver, and continued to act as such during all the times involved in this proceeding. During the course of the receivership, the creditors were paid in full, and at the time of the commencement of this action, the only unpaid claimants against the assets of the company were the stockholders, who had at that time received 15 per cent. of the amount of their respective claims. Plaintiff was one of the stockholders, holding a claim as such in the amount of $8,891.27 against the company, upon which the 15 per cent. had been paid, there remaining due him something over $7,500. On May 25, 1935, he made an offer to defendant to purchase lots 6, 7, and 8, in

block 6 of the North Morley Avenue addition to the city of Nogales, they being assets of the company, for the sum of $1,850.79, payment of said sum to be made by deducting from his unpaid claim against the company the purchase price of the lots.

The defendant answered, stating in substance that the price offered was a fully adequate one for the property, but that he was of the opinion he was prohibited by law from accepting the offer, for the reason that it was, in effect, a trading of assets for a claim, and that the transaction might result in an improper preference of one claimant against others of the same class. He, therefore, refused to accept the proposition, or to report it to the superior court for consideration.

The other allegations of the complaint are, in substance, that the price which plaintiff offered was more than the property was worth, and that the company would have benefited by the transaction in that the claims against it would be reduced by the purchase of the lots, so that the other stockholders would get a larger percentage on their claims than if the offer was rejected. The complaint, however, did not in any manner indicate whether, as a result of the transaction, plaintiff would or would not receive a greater percentage of his claim than other claimants of the same class.

The question before us is whether, under the circumstances above set forth, the receiver had the legal power to trade the assets of the company for claims against it. If he had, we think it was his duty to report the offer to the superior court so that it might be determined whether it was to the benefit of the company to accept it or not. If, on the other hand, under such circumstances defendant had no power to accept the offer, it was, of course, useless to present it to the superior court, for the latter could do no

more than affirm the action of the receiver in refusing to accept it.

We think the question may be answered by a recital of some of the fundamental principles governing the handling of insolvent corporations. These principles may be stated as follows: (1) It is the duty of the receiver of an insolvent corporation to so handle the assets that the creditors and stockholders of the corporation may secure the largest possible dividends on their respective claims against the corporation; (2) in so doing, he must not only consider the rights of the claimants as between them and the corporation, but their respective rights as between themselves; (3) in ordering a distribution of the assets of an insolvent corporation, all creditors of the same class must be treated on an equal basis. These principles are so elementary that we think they need no citations to support them. Let us apply them to the present situation. What would be the effect of a sale of the property in accordance with the terms offered by the plaintiff? So far as the relation between plaintiff and the company was concerned, it would merely exchange an asset for a claim of admittedly greater value than the assets for which it was given. If, therefore, the company were solvent, there can be no question that the proposed exchange would be a beneficial one, for out of its remaining assets it could fully satisfy all other claims against it. But it is not solvent, which means that it is unable to satisfy the various claims against it in full. The effect of the transaction, therefore, would be to satisfy part of the claim of one creditor in full without in any manner augmenting the assets of the corporation available for distribution for the other creditors. This would be, in effect, granting a preference at least to the amount of the claim satisfied to one creditor as against another. We have held in the case of *White* v. *Wogaman,* 47 Ariz. 195, 54

Pac. (2d) 793, that this cannot be done, and that all claimants of the same class must be cared for equally. We think, therefore, in the absence of an affirmative showing that the effect of the transaction would be not only to lessen the claim against the corporation, but to insure that the remaining claimants would secure at least as great a percentage on their claims as plaintiff did upon his, neither the receiver nor the trial court had the power to approve the transaction.

Our attention has been called only to one case which seems to bear on the precise point involved. *Rossi* v. *Colorado Pulp & Paper Co.*, 88 Colo. 461, 299 Pac. 19, 40. Therein certain creditors were given the right to use in payment for assets of the insolvent corporation claims which they held against the corporation as represented by stock therein. The court said:

"No court order is necessary to enable a litigating stockholder to bid at a sale of the assets of the corporation under a decree in the suit in which he is a litigant. *Pewabic Mining Co.* v. *Mason*, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732. This applies to Myers, holder of a large block of preferred stock in the pulp company, in whose favor such an order was granted. In his case, the order is even more objectionable, because it allows him or his assignees to use such stock in payment of the purchase price, under certain conditions, most of which have reference to the Myers-Rude stipulation. Aside from the fact that Myers needs no court order to enable him to make a cash bid, the same as any one else, and also the confusion incident to any such order, it is erroneous in other particulars. It is to be remembered that Myers' stock is in the debtor corporation. To permit him to so use it suggests the idea of using a debt to pay a debt, or at least stock in an insolvent corporation with which to buy its assets. It cannot be done, and the order will be set aside."

The judgment of the superior court of Santa Cruz county is affirmed.

McALISTER, C. J., and ROSS, J., concur.