797 P.2d 727

**ACADEMY LIFE INSURANCE COMPA-NY, Claimant–Appellant,**

v.

**James T. ODIORNE, Permanent Receiver for United Bankers Life Insurance Company–Appellee,**

**Roy E. Gill, Permanent Receiver for Lincoln Life Insurance Company–Appellee.**

**No. 1 CA–CV 88–460.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 21, 1990.

Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C. by John R. Hoopes, Phoenix, for claimant-appellant.

Mangum, Wall, Stoops & Warden by Daniel J. Stoops, Flagstaff, for appellee Odiorne.

## OPINION

FIDEL, Judge.

In receivership proceedings for a defunct insurer, one claimant contested the validity of a claim brought by another. The receiver allowed the disputed claim, and the superior court approved. The opposing claimant now appeals.

We reverse. We find the evidence insufficient to establish the validity or invalidity of the disputed claim. En route to this conclusion, we discuss the nature of receivership proceedings and hold as follows:

1. A receivership claimant has standing to challenge the validity of a rival claim by raising defenses ordinarily personal to the debtor, such as the statute of limitations, if the receiver has not already raised them.

2. A.R.S. § 20–640, which requires claimants to file claims within four months from the granting of an order of liquidation, does not constitute a statute of limitations; timely presentation to the receiver under that statute does not revive a claim that is otherwise time barred.

3. A claim arising in another state that remains valid and unextinguished in its state of origin may be asserted in an Arizona receivership even if the Arizona statute of limitations would bar its assertion as an original proceeding in an Arizona court.

In addition to resolving these issues, we examine and interpret a portion of a Texas statute, article 3.10 of the Texas Insurance Annotated Code, that has not yet been interpreted by the Texas courts.

## PROCEDURAL AND FACTUAL BACKGROUND

After placing Lincoln Life Insurance Company ("Lincoln Life") into conservatorship, the director of Arizona's Department of Insurance commenced delinquency proceedings in the Superior Court of Arizona and secured the appointment of a receiver. In response to petitions filed by the receiver, the court later ordered the liquidation of Lincoln Life's assets and established a procedure for Lincoln Life's creditors to file claims. On January 20, 1987, the court entered an order giving creditors four months to file claims.

Among the claimants seeking recovery were Academy Life Insurance Company ("Academy Life") and James T. Odiorne, permanent receiver of United Bankers Life Insurance Company ("United Bankers"). Both claims arose from reinsurance agreements. The origin and validity of Academy Life's claim are not at issue.

United Bankers, itself in receivership, was an insurer organized under Texas Law. United Bankers' claim stemmed from a reinsurance agreement that United Bankers and Lincoln Life executed in Texas in 1979. The agreement provided that Lincoln Life would reinsure 100 percent of United Bankers' liability on certain policy forms to be attached from time to time as exhibits to the agreement. Exhibit 1 to the agreement listed seven policy forms to be covered, and a later addendum listed two more.

A Texas statute prohibited a domestic company from reinsuring "its entire outstanding business" unless the assuming insurer was licensed in Texas and the agreement was approved by the Texas Commissioner of Insurance. Lincoln Life was or-

ganized under Arizona law and was not licensed to do business in Texas. The reinsurance agreement between United Bankers and Lincoln Life was not approved by the Texas Commissioner of Insurance.

After executing the reinsurance agreement, the parties evidently disputed how it was to operate. Neither party completed annual reports to properly reflect the existence of the agreement. However, Kenneth Hobbs, a former vice president and comptroller of United Bankers, testified that United Bankers viewed the agreement as enforceable and took steps to try to resolve the disagreement over its operation. He eventually sent a letter to Lincoln Life's president outlining a settlement proposal, but United Bankers later notified Lincoln Life that it was cancelling the agreement.

In September 1982, a conservatorship for United Bankers took effect, followed shortly by a receivership proceeding. On April 12, 1983, United Bankers' receiver filed suit against Lincoln Life in a Texas district court to recover commissions, premiums, and administrative fees allegedly owed under the reinsurance agreement. The record is silent concerning the progress of that suit.

United Bankers filed its proof of claim in this receivership on April 27, 1987, within the four-month time limit set by the Maricopa County Superior Court. Although the proof of claim did not refer to a judgment or award against Lincoln Life, it included a copy of the Texas complaint, alleging approximately $1,726,599 in damages under the reinsurance agreement. Also attached to the proof of claim were later calculations prepared by Hobbs amending the damage claim to $1,919,586.

On June 18, 1987, the receiver recommended that the court pay various creditor claims including Academy Life's $1,000,000 claim and United Bankers' $1,919,586 claim. Academy Life opposed the recommendation to pay United Bankers' claim; the assets in receivership totalled a mere

$110,000, and United Bankers' claim would significantly diminish Academy Life's pro rata share. Following discovery, briefing, and argument by both United Bankers and Academy Life, the court approved the recommendations of the receiver, including payment of United Bankers' claim.

Academy Life appeals, arguing that the receiver should have disallowed United Bankers' claim for either of two reasons: (1) the applicable Arizona statute of limitations bars enforcement of the reinsurance agreement in the receivership proceedings; (2) the reinsurance agreement is illegal and unenforceable in Texas, the source of applicable law, because Lincoln Life was not licensed to do business in Texas and the agreement was not approved by that state's Commissioner of Insurance. United Bankers disputes the merits of these arguments and also attacks Academy Life's standing to assert them.

## STATUTE OF LIMITATIONS

### 1. *Academy Life's Standing to Assert Defense*

■ The defense of the statute of limitations is a personal privilege that a debtor or one in privity may elect to urge or waive. *Trujillo v. Trujillo,* 75 Ariz. 146, 148, 252 P.2d 1071, 1072 (1953). Because this defense is personal, most jurisdictions hold that a general creditor [1] may not plead the statute of limitations on its debtor's behalf. *Fehn v. Schlickling,* 26 Tenn.App. 608, 614, 175 S.W.2d 37, 39 (1943); 54 C.J.S. *Limitations of Actions* § 15 (1987); Annotation, *Right of Creditor to Set Up Statute of Limitations Against Other Creditors of His Debtor,* 71 A.L.R.2d 1049, 1051–54 (1960). As with most general rules, however, there are exceptions.

Some courts, for example, observe an exception for lien or judgment creditors. *E.g., Schriber v. Alameda County–East Bay Title Ins. Co.,* 156 Cal.App.2d 700, 320

---

[1] The Uniform Commercial Code defines the term "creditor" to include a "general creditor." A.R.S. § 47–1201(12). A "general creditor" is "a creditor at large ... or one who has no lien or security for the payment of his debt or claim."

Blacks Law Dictionary, 5th ed. at 332 (1979). A "creditor at large" is likewise "one who has not established his debt by the recovery of a judgment or has not otherwise secured a lien on any of the debtor's property." *Id.*

P.2d 82 (1958); *Rosevele Frocks, Inc. v. Sommers,* 191 Misc. 614, 78 N.Y.S.2d 41 (N.Y.App.Term 1948); *see generally, Right of Creditor supra* at 1054–1061. We need not determine Arizona's position on this exception because Academy Life does not purport to be other than a general creditor.

A more closely related exception has been recognized when the debtor has died and the estate is in probate. The West Virginia Supreme Court of Appeals permitted a creditor to raise the defense in this setting because "it was then impossible for the debtor to plead the statute of limitations; his voice was hushed." *Welton v. Boggs,* 45 W.Va. 620, 32 S.E. 232, 233 (1898).

For similar reasons, courts often have recognized an exception where the debtor is insolvent and has lost the right to direct the affairs of the estate. *See McCartney v. Potomac Electric Co.,* 94 Va. 198, 203, 26 S.E. 419, 421 (1896); *Robertson v. Wade,* 17 Tenn.App. 457, 68 S.W.2d 487, 492 (1933). As the Supreme Court of Georgia stated in *Pendley v. Powers:*

> Where an insolvent estate has been placed in the hands of a receiver for administration and distribution, each creditor is interested to see that only existing claims against the deceased share in the distribution. The administrator ... cannot be allowed to favor one creditor and prejudice another by pleading the statute of limitations as to some claims and not as to others, and denying to the interested creditors the right to make the defense, on the ground that it is a personal privilege.

129 Ga. 69, 58 S.E. 653, 654 (1907).

■ We have found no Arizona cases on this issue. The Arizona Supreme Court has stated, however, that a receiver must consider the respective rights as between claimants. *Sisk v. White,* 50 Ariz. 103, 106, 69 P.2d 242, 244 (1937). A.R.S. § 20–628(D) gives interested parties the right to object to claims the receiver recommends for payment. We believe that it comports with *Sisk* and § 20–628(D) to hold, as the cited jurisdictions have held, that claimants have standing to assert the statute of limitations defense in receivership proceedings where the receiver has neglected to do so.

*2. A.R.S. § 20–640 Establishes An Administrative Claims Procedure, Not a Statute of Limitations*

■ Having concluded that Academy Life has standing to raise the statute of limitations, we consider the merits of that defense.

Academy Life argues that the four-year statute of limitations in A.R.S. § 12–544(3) (1984) applies. That statute provides in relevant part that a lawsuit based on a written instrument executed outside Arizona must be "commenced and prosecuted" within four years after the cause of action accrues. The parties agree that the reinsurance agreement was executed in Texas. Academy Life points out that United Bankers terminated the reinsurance agreement in August 1982 and filed its receivership claim in April 1987, more than four years after its claim arose. Academy Life argues, therefore, that the Arizona statute bars United Bankers' claim.

United Bankers responds that A.R.S. § 12–544(3) does not apply. It urges that A.R.S. § 20–640 sets the limitation period for claims in receiverships. That statute provides, subject to exceptions, that proofs of claim against an insolvent insurer must be filed within four months of the entry of an order declaring the insurer to be insolvent. United Bankers argues that this four month provision is the more specific of two competing statutes of limitation and that it, accordingly, controls. *E.g., Peabody Coal Co. v. Navajo County,* 117 Ariz. 335, 339, 572 P.2d 797, 801 (1977); *Webb v. Dixon,* 104 Ariz. 473, 475, 455 P.2d 447, 449 (1969); *Kearney v. Mid–Century Ins. Co.,* 22 Ariz.App. 190, 192, 526 P.2d 169, 171 (1974) (when a general and a specific statute conflict in application to the same subject, the more specific of the statutes controls).

The flaw in United Bankers' argument is that the receivership claims statute is not a statute of limitations at all. The term "limitation of action" refers to a bar occa-

sioned by the lapse of time since a cause of action arose. *Christmas v. Russell*, 72 U.S. (5 Wall) 290, 300, 18 L.Ed. 475 (1866). The four-month time period in the claims statute does not run from the time United Bankers' cause of action arose, but from the date of the court order declaring Lincoln Life insolvent. A.R.S. § 20–640 does not purport to preempt otherwise applicable statutes of limitations; it merely provides an administrative deadline to promote the orderly presentation and recognition of otherwise valid claims.

A claim is not otherwise valid if it has been extinguished by the statute of limitations in every jurisdiction where it might legitimately be brought. Thus, we hold, there is no conflict between an administrative deadline such as A.R.S. § 20–640 and an otherwise applicable statute of limitations.

3. *A Claim That is Viable and Pending in Another Jurisdiction May be Asserted in an Arizona Receivership Even Though the Claim Would Be Time Barred in Arizona*

 This brings us to our next issue. Academy Life points out correctly that United Bankers did not file a lawsuit against Lincoln Life in Arizona within the four years provided by A.R.S. § 12–544(3). This does not mean, however, that United Bankers' claim was extinguished in other jurisdictions and ineligible for assertion in a receivership conducted in this state.

To the contrary, it appears that United Bankers asserted its rights against Lincoln Life in Texas within that state's allotted time. Moreover, Texas, as the state where United Bankers conducted the business to be reinsured, was the state of most significant relationship to the subject of the parties' agreement. If this Texas claim was pending when United Bankers filed its receivership claim for a fair share of Lincoln Life's assets, we conclude that the receivership claim is not time barred.

We emphasize that the present Arizona proceedings were not initiated by United Bankers but by the director of Arizona's Department of Insurance, whose purpose was to provide through receivership a means for creditors with viable claims against Lincoln Life to share in the distribution of the company's assets. Ralph E. Clark, a venerable authority on receiverships, explains:

> When a court of equity ... takes into its possession property of an insolvent corporation, the court thereby deprives creditors of their ordinary legal remedies of levy, execution, etc. In lieu thereof the court invites them to file their claims and share equitably in the assets which it offers to distribute.... *The action of the court in thus ordering claims to be filed does not alter the substantive status of claims.* A claimant is under no obligation to file his claim, nor is his substantive right outlawed by non-filing. Failure to file is not like the bar of the statute of limitations.

Clark, *Contingent and Immature Claims in Receivership Proceedings*, 29 Yale L.J. 481 (1920) (emphasis added).

Modern authorities echo Clark's distinction between a receivership claim and the claimant's underlying cause of action. Fletcher writes, for example, that when a creditor's suit is pending in another state at the time the debtor's receiver is appointed, that suit may still be prosecuted to judgment, and a judgment so obtained will establish the rightful amount of the receivership demand. Fletcher Cyc. Corp. § 7800 (1989). Variously treated as an attachment, sequestration, or equitable execution before judgment, 75 C.J.S. *Receivers* § 3 (1952), a receivership provides for an equitable distribution of the debtor's property to creditors who present viable claims.

A case cited as illustrative by Fletcher is helpful to our resolution of this case. Fletcher Cyc. Corp. § 7904 n. 2. In *National Roofing Tile Co. v. McDonald*, the Connecticut Supreme Court held that the possessor of a matured claim, enforceable in the state where the contract was to be performed, should be allowed his claim in a Connecticut receivership even though the claim was not enforceable by action under Connecticut rules of practice and proce-

dure. 94 Conn. 240, 242–43, 108 A. 726, 727 (1919). The court stated:

> The plaintiff has never attempted to enforce its right of action for legal relief here, and is not attempting to do so. It is only asking to share in the division of the indemnity company's assets in the custody and control of our courts for the purpose of making a just and equitable division of them among rightful claimants.

*Id.* at 242–43, 108 A. 727.

This reasoning applies equally to this case. United Bankers filed its claim within the four-month period prescribed by § 20–640 and informed the Arizona receiver that it had initiated a claim against the debtor in the State of Texas. Assuming that the Texas action remained viable, United Bankers' administratively timely claim in the Arizona receivership sufficed to permit it to share in the division of Lincoln Life's assets, if the court otherwise approved the claim.[2]

### 4. *The Status of the Texas Suit*

■ We conclude that a viable and pending claim in Texas would have entitled United Bankers to file as a claimant in the Arizona receivership for Lincoln Life. From the record before us, however, we know only that United Bankers initiated its Texas suit with a complaint in 1983. We recognize that, when the superior court appointed the Lincoln Life receiver, the court also issued an injunction prohibiting claimants from prosecuting existing suits. The record does not tell us, however, whether the Texas suit remained pending when United Bankers filed its Lincoln Life receivership claim.

It was the burden of United Bankers to establish the viability of its claim. In Arizona, "[a]ll claims against an insurer against which delinquency proceedings have been begun shall set forth in reasonable detail ... the facts upon which the claim is based...." A.R.S. § 20–628 (1990). "A creditor must do more than put the receiver on inquiry as to his claim; he must file proof in itself satisfactory...." 75 C.J.S. *Receivers* § 271 (1952). This burden extended to proving that the claim was kept alive beyond its filing in the Texas courts. Because the record does not contain such proof, we are unable to sustain the trial court's approval of the receiver's recommendation to pay the United Bankers claim.[3]

If United Bankers meets the burden to supply such proof on remand, it will establish the pendency of a viable claim. Whether the claim is sufficiently precise to warrant a share in Lincoln Life's assets is a separate question. However, claims that are in suit when a receiver is appointed should not be rejected simply because judgment has not yet been entered fixing their amount. Fletcher Cyc. Corp. § 7904. When pending suits and prospective judgments are brought to the court's attention, it may pay an appropriate portion of liquidated claims while withholding sufficient assets for the unliquidated claims, provided they may be resolved without undue delay. *Id.* Accord Clark, *Contingent and Immature Claims supra* at 492, 496. Thus, if United Bankers meets its burden of proving upon remand that its claim remains

---

**2.** This point is supported by a comparison between the Arizona receivership statutes and probate code. The probate code specifically requires claimants to meet the Arizona statute of limitations as well as an administrative deadline for filing claims. "[N]o [probate] claim which is barred by any statute of limitations at the time of the decedent's death shall be allowed or paid." A.R.S. § 14–3802 (Supp.1989). "All claims against a decedent's estate which arose before the death of the decedent, ... *if not barred earlier by other statute of limitations,* are barred ... unless presented ... within four months after ... notice to creditors...." § A.R.S. 14–3803(A)(1) (1974) (emphasis added). In contrast, the Arizona statutes governing insurance receivership are silent on the subject.

After declaring the insurer to be insolvent, the director of insurance "shall notify all persons who may have claims against the insurer ... within four months from the date of entry of the order [of liquidation], or if the director certifies that it is necessary, within such longer time as the court shall prescribe." A.R.S. § 20–640 (1990).

**3.** Our review is deferential, and we view the evidence in the light most favorable to the judgment. *Williams v. Nall,* 4 Ariz.App. 416, 419, 420 P.2d 988, 991 (1966). We cannot defer, however, where the necessary evidence is absent from the record.

viable, the court may provide appropriately for a timely resolution.[4]

## ILLEGALITY

The question remains, however, whether the reinsurance agreement between United Bankers and Lincoln Life is invalid under Texas law because Lincoln Life was not licensed to do business in Texas and because the state commissioner did not approve the agreement.

As a preliminary matter, we reject United Bankers' argument that Academy Life, as a third party to the agreement, lacks standing to raise the illegality defense. Academy Life has standing to raise the illegality defense for the same reason it has standing to raise the statute of limitations defense. We have concluded that in an insolvency proceeding claimants can raise defenses that would otherwise be personal to the debtor.

We turn to the merits of the issue, which both parties agree are governed by Texas law. The Texas statute authorizing reinsurance agreements, article 3.10 of the Texas Ins.Code Ann. (Vernon 1981), provides in part:

> No such domestic company shall have the power to reinsure *its entire outstanding business* unless the assuming insurer is licensed in this state and until the contract therefor shall be submitted to the Commissioner of Insurance of Texas and approved by him as protecting fully the interests of all policy holders.

(Emphasis added.)

■ United Bankers was a domestic company, organized and existing under Texas law. Lincoln Life, which entered an agreement to reinsure United Bankers' business, was not licensed to do business in Texas, and the agreement was never submitted to the Texas Commissioner of Insurance for approval. United Bankers does not dispute that, under these circumstances, the contract would be invalid if it contemplated reinsurance of United Bankers' "entire outstanding business." The

parties dispute, however, the proper interpretation of that phrase, and they dispute whether the facts show that the reinsurance agreement covered United Bankers' "entire outstanding business."[5]

In describing the business to be reinsured, the agreement provided:

> The Company agrees to cede to the Reinsurer, and the Reinsurer agrees to accept as reinsurance 100% of the Company's liability under each and every policy certificate or contract (hereinafter referred to as "policies") as set forth in exhibits which may from time to time be attached hereto and issued and underwritten by Company....

Exhibit 1 listed seven policy forms, and the parties later signed an addendum that listed two additional policy forms.

Although the agreement expressly provided for the reinsurance of 100 percent of the listed policy forms, the agreement did not state whether United Bankers had other forms not covered by the agreement. The only evidence in the record on this issue was deposition testimony of Kenneth Hobbs, United Bankers' former comptroller, who stated that his company's credit insurance division had reinsurance in effect with a different company in Dallas, Texas, and that the company also had stoploss reinsurance not part of this agreement.

Academy Life argues that the language "entire outstanding business" should be interpreted to mean all of the business under any one particular policy form. It urges that, because the reinsurance agreement on its face stated that United Bankers was reinsuring 100 percent of the liability under each of the policy forms attached, it applied to the "entire outstanding business" within the meaning of the statute. United Bankers, on the other hand, argues that the term "entire outstanding business" refered to all insurance business done by the company. It contends that the testimony of Kenneth Hobbs identifying two types of insurance reinsured by other companies proved that the agreement with Lincoln

---

4. Among the court's options is to modify its injunction and permit the Texas suit to proceed to judgment. *Fletcher Cyc. Corp.* § 7800.

5. Academy Life also argues that the evidence establishes that the parties treated the agreement as invalid. The evidence, however, is clearly inconclusive on this point.

Life did not cover United Bankers' "entire outstanding business."

We find neither interpretation persuasive. And, as the Texas courts have not yet interpreted these words in the statute, we are obliged to do so on our own. Article 3.10 is part of chapter 3 of the Texas Insurance Code, entitled "Life, Health and Accident Insurance." The entirety of Chapter 3 concerns life, health, and accident insurance. Other types of insurance are controlled by other chapters of the Texas code. *See, e.g.,* Tex.Ins.Code Ann. art. 15.01, 16.01 and 17.01 (Vernon 1981). We interpret the language "entire outstanding business" within this statutory context to refer to all business in life, health, and accident insurance lines.[6]

■ The question, thus, is whether the reinsurance agreement reinsured United Bankers' entire business in life, health, and accident insurance policies. The record is silent on this point. The question to Kenneth Hobbs, which prompted a response about other lines of insurance, was insufficiently specific to establish whether United Bankers had other life, health, and accident policies. United Bankers points to the fact that two policy forms were included by addendum as proof that not all of the forms were included when the parties entered their agreement. This proves nothing of the kind. The two policy lines in the addendum might, for all this record discloses, have been new. Thus, United Bankers, consistently with this record, might have reinsured all of its life, health, and accident business with Lincoln both before and after the addendum. From this record, we simply cannot tell.

■ Because the record contains no conclusive evidence on the coverage of the reinsurance agreement, we remand this issue to the trial court for additional evidence. We note that Academy Life has the burden to show that the contract was illegal. There is a well-settled presumption of legality unless illegality appears upon the contract's face. 17 Am.Jur.2d *Con-*

tracts § 238 (1964); *National Cigarette Service Co., Inc. v. Farr,* 42 Colo.App. 356, 359, 594 P.2d 603, 605 (1979); *Romanus v. Biggs,* 214 S.C. 145, 152, 51 S.E.2d 503, 505 (1949); *Weiner v. Wilshire Oil Co. of Texas,* 192 Kan. 490, 496, 389 P.2d 803, 808 (1964). Texas courts recognize the presumption. *See, e.g., Seaview Hospital v. Medicenters of America,* 570 S.W.2d 35, 39 (Tex.Ct.App.1978); *Federal Underwriters Exchange v. Coker,* 116 S.W.2d 922, 924 (Tex.Ct.App.1938). This contract was not illegal on its face, and Academy Life must prove that United Bankers thereby undertook to reinsure its "entire outstanding business" in life, health, and accident insurance without the Texas Commissioner's approval in violation of Texas law.

### CONCLUSION

For the reasons stated, we reverse the trial court's approval of the receiver's allowance of United Bankers' claim, and we remand for further proceedings consistent with this opinion.

GERBER and EUBANK, JJ., concur.

---

6. We recognize that Texas law provides that the heading of a chapter "does not limit or expand the meaning of a statute." Tex. Gov't Code Ann. § 311.024 (Vernon 1988). We refer, however, not merely to the heading, but to the subject and content of chapter 3 to provide a context for the interpretation of the term disputed here.