IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KARL HIATT, *Plaintiff/Appellee,*

and

MCA FINANCIAL GROUP, LTD, through its President, MORRIS C.
AARON, the court-appointed receiver, *Appellee,*

*v.*

HETAL SHAH, *Intervenor/Appellant.*

No. 1 CA-CV 14-0441
FILED 12-24-2015

Appeal from the Superior Court in Maricopa County
No.  CV2010-003106, CV2010-006635, and CV2010-025559
(Consolidated)
The Honorable J. Richard Gama, Judge

**AFFIRMED**

COUNSEL

Conant Law Firm PLC, Phoenix
By Paul A. Conant, Melissa A. Emmel
*Counsel for Plaintiff/Appellee Karl Hiatt*

Snell & Wilmer, LLP, Phoenix
By Christopher H. Bayley, Benjamin W. Reeves
*Counsel for Appellee MCA Financial Group, LTD and Morris C. Aaron*

Gallagher & Kennedy, PA, Phoenix
By Mark Deatherage
*Counsel for Intervenor/Appellant*

Offit Kurman, PA, Baltimore, MD
By Timothy C. Lynch, Eric Pelletier
*Co-Counsel for Intervenor/Appellant*

---

## OPINION

Presiding Judge Donn Kessler delivered the opinion of the Court, in which Judge Andrew W. Gould and Judge Patricia K. Norris joined.

---

**K E S S L E R**, Judge:

¶1 Intervenor/Appellant Hetal Shah appeals the trial court's approval of a receiver's decision to honor a receivership certificate issued to Appellee Karl Hiatt and his wife Dianna Hiatt (collectively, the "Hiatts"). For the reasons set forth below, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2 The Cheyenne Entities[1] were formed to develop video games based on the Stargate SG-1 and Stargate Atlantis television series, including an online game to be known as Stargate Worlds. Shortly before the scheduled release date, three investors filed a derivative action alleging misappropriation of various Cheyenne Entities' assets, which led to the appointment of a receiver (the "Receiver"). Two other investor lawsuits were consolidated into the receivership case, one brought by Karl Hiatt and Keith Deering (the "Hiatt Case") and one brought by Hetal Shah, Sam Dalembert, and David Roberts (the "Shah Case").

---

[1] The entities are Cheyenne Mountain Entertainment, Inc. ("CME"); Cheyenne Mountain Games, Inc. ("CMG"); Cheyenne Mountain Productions, Inc.; Cheyenne Mountain Software, Inc.; Firesky, LLC; Stargate Worlds, LLC; Superstition Studios, LLC; Handcranked Games, LLC; Mass Illusions LLC; Knowledge Relay, LLC; Cine Mundo, LLC; and World Games, Inc.

¶3        In October 2010, the Receiver and several parties reached a settlement in the Shah Case. As part of the settlement, two of the Cheyenne Entities (CME and CMG) would incur debts of $473,364.61 to Hiatt and $415,100.00 to Shah, Dalembert, and Roberts, representing expenses Hiatt, Shah, Dalembert, and Roberts incurred in preserving the Cheyenne Entities' assets. The parties agreed that this debt would be secured by lien rights on receivership assets equivalent to a Receiver's Certificate in the most senior position legally permissible.[2] The trial court formally approved the Shah Case settlement and authorized the Receiver to issue Receivership Certificate No. 1 to Shah, Dalembert, and Roberts, and Receivership Certificate No. 2 to the Hiatts.

¶4        The Receiver then entered into negotiations to obtain a new license to complete Stargate Worlds. After some discussion, the owner of the Stargate intellectual property rights chose not to issue a new license. Because this decision foreclosed any chance of completing Stargate Worlds, the Receiver determined that liquidation was in the creditors' best interest.

¶5        Before distributing the receivership estate's assets, the Receiver sought to "examine the universe of claims that exist[ed]" against the Cheyenne Entities. To achieve this, the Receiver requested an order establishing procedures and a deadline for submitting claims against the receivership estate. In response, the trial court issued a Claims Bar Order that required all claimants to

> submit to the Receiver a completed and signed Claim Form along with all documentation supporting the claim no later than forty-five (45) days after the date of service of the Bar Date Notice and this Order, as reflected below (the "<u>Bar</u>

---

[2] "Receivership certificates are certificates or evidences of indebtedness issued under a court order by receivers in possession of property, payable out of a particular fund, and are usually a first lien on the property." 65 Am. Jur. 2d *Receivers* § 304, Westlaw (database updated November 2015). Receivership certificates are not debts of the insolvent corporations but of the receiver and are supported by the pledged faith of the court that the property in its custody will be used for their payment. 16 Fletcher Cyc. Corp. § 7883, Westlaw (database updated September 2015); *accord* 3 Ralph Ewing Clark, *A Treatise on the Law and Practice of Receivers* § 459 at 757 (3d ed. 1959) (receivership certificates "are debts of the receiver backed by the pledged faith of the court, that the property or the proceeds of which they are charged, is in its possession, subject to be, and that it will be, disposed of by it for the payment of them.").

Date"), such that the Claim Form is actually **received** by the Receiver on or before the Bar Date.

The Claims Bar Order further provided that anyone who did not submit a timely Claim Form "shall be prohibited from (i) asserting such claim . . . in any manner against the receivership estate; (ii) participating in the above-captioned receivership case with respect to any plan of liquidation proposed by the Receiver . . . ; and (iii) receiving any distribution of the proceeds of that liquidation."

¶6 The Hiatts did not submit a Claim Form until approximately three weeks after the Bar Date. Nonetheless, the Receiver proposed paying the Hiatts' claim in full because the Certificates were debts of the Receiver and the Receiver had notice of the Certificates prior to the filing of the Claims Bar Order.[3] Shah objected, arguing that the Receiver was obligated to reject the Hiatts' claim because they did not submit a Claim Form by the Bar Date. The trial court overruled Shah's objection and approved the Receiver's proposed distribution plan. Shah timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (Supp. 2015).

## DISCUSSION

### I. The Trial Court Did Not Abuse its Discretion in Allowing the Hiatts' Claim

¶7 The trial court has broad authority to control claims brought against a receivership estate, and the principles of equity govern whenever applicable. Ariz. R. Civ. P. 66(c)(4); 75 C.J.S. *Receivers* § 271, Westlaw (database updated December 2015); *see also Acad. Life Ins. Co. v. Odiorne*, 165 Ariz. 188, 192 (App. 1990) (stating that the goal of a receivership is to make an equitable distribution to those creditors who present viable claims). Fashioning an equitable remedy is within the trial court's discretion, and such remedies will not be disturbed on appeal absent an abuse of that discretion. *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 409, ¶ 106 (App. 2012).

---

[3] All of the documents needed to effectuate the settlement agreement were reviewed, vetted, and approved by the Receiver. These included documents setting forth the exact amount of indebtedness incurred to Hiatt, Shah, Dalembert, and Roberts, and all of the promissory notes, security arrangements, Uniform Commercial Code financing statements, and escrow agreements contemplated by the settlement agreement.

¶8 The issue before us—whether the Hiatts' failure to timely submit a Claim Form bars their claim—is one of first impression in Arizona. Our review of other jurisdictions indicates that, absent statutory language to the contrary, receivership courts have broad discretion as to whether to accept or reject late-filed claims:

> The failure of a creditor to file their claim within the time ordered by the [receivership] court does not, like the running of a statute of limitations, operate as an absolute bar to the claim, at least where the court has not made a final distribution of the receivership property. Under certain conditions, the court may allow claims to be filed after the expiration of the filing deadline. Indeed, the court has wide discretion with respect to the filing of claims after the expiration of the time set for that purpose.

16 Fletcher Cyc. Corp. § 7900.20, Westlaw (database updated September 2015); *see also Callahan v. Moneta Capital Corp.*, 415 F.3d 114, 120 (1st Cir. 2005) (stating a receivership court "has broad discretion in determining whether to permit a claimant to file a late claim") (citing 3 Ralph Ewing Clark, *A Treatise on the Law and Practice of Receivers* § 652 (3d ed. 1959)); *Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 197 P.3d 1051, 1060 (Nev. 2008) ("The receivership court has discretion to allow a late-filed claim, and generally, to refuse to do so when sufficient assets to cover the claim remain at the time when the claim is made constitutes an abuse of that discretion.").

¶9 In exercising its discretion, the court should consider all relevant circumstances surrounding the party's failure to file a timely claim. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These include, but are not limited to, "the excuse offered by the party seeking the waiver or extension and the consequences to all persons affected by the granting or denying of it." *Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, 646 F.3d 401, 405 (7th Cir. 2011).

¶10 We find no abuse of discretion. The Hiatts explained they did not believe a Claim Form was necessary because the Receiver was already aware of their claim. Shah does not dispute that the Receiver already knew of the Hiatts' claim or that a completed Claim Form from the Hiatts, whether timely or not, would have only repeated information the Receiver already knew. "The object of requiring the filing of claims within a stated period is to give the Receivers timely notice of the existence thereof." *Bankers Tr. Co. v. Fla. E. Coast Ry. Co.*, 31 F. Supp. 961, 963 (S.D. Fla. 1940). If the receiver already knows about a particular claim, "[t]here is no

substantial reason for requiring further proof of such a claim." *Id*. Shah also had notice of the Hiatts' claim due to his participation in the settlement agreement. The Hiatts' delay in filing a Claim Form was relatively short and did not substantially impact the proceedings or implicate the doctrine of laches.[4] Thus there was no reliance by the Receiver or Shah on the Hiatts' filing of a Claim Form and no prejudice to Shah by approving the claim after a short delay.

¶11 The out-of-state cases on which Shah relies do not compel a different conclusion. In *SEC v. Hardy*, the Ninth Circuit acknowledged that a district court overseeing a receivership has "broad equitable powers," including the power to "establish deadlines for filing claims, and to bar untimely claims." 803 F.2d 1034, 1038-39 (9th Cir. 1986). The *Hardy* court affirmed the district court's rejection of various claims filed between three weeks and three years beyond the claims bar date, but also affirmed the allowance of several late claims where circumstances warranted. *Id*. at 1038-39.

¶12 Likewise, in *First-Citizens Bank & Trust Co. v. Berry*, the court affirmed the rejection of a late-submitted claim, but noted that the trial court had discretion under North Carolina law as to whether to accept or reject it. 163 S.E.2d 505, 509 (N.C. Ct. App. 1968). Finally, in *Krause v. Featherston*, the court found that the trial court properly exercised its discretion to reject a claim where the claimant had waited three years and thus "[o]bviously . . . slept on his rights." 376 F.2d 832, 833 (1st Cir. 1967).

¶13 Each of these cases confirms that a trial court has discretion to reject late-filed claims, but none say that a trial court cannot accept late-filed claims if the circumstances warrant. *See* 75 C.J.S. *Receivers* § 274 (stating claims bar orders "are not given the effect of inflexible rules" and "a claim not filed within the prescribed time is not barred where the circumstances are such that the receiver has ample notice of it."); *see also Foster v. Ames*, 3 Ariz. App. 206, 208 (1966) (relying on Corpus Juris Secundum to resolve an

---

[4] "A claimant may be guilty of laches in presenting his claim, dependent upon the circumstances of the case, particularly if he claims property already distributed, or attempts to set aside a distribution or if to grant the claimant's request would require readjustment of many of the receiver's accounts, delay of distribution and be prejudicial to many just claimants. . . . [m]ere lapse of time does not constitute laches, but it must appear that something has occurred that would make it inequitable to grant the relief prayed for." Clark, *supra*, § 652(b) at 1144.

open question of law regarding an Arizona receivership). Here, the record clearly reflects not only that the Receiver knew of the Hiatts' claim, but that the Receiver "created the indebtedness and agreed to the Receivership Estate's obligations pursuant to the Court's Orders." We therefore find that the trial court did not abuse its discretion when it allowed the Hiatts' claim.[5]

## II. Shah Did Not Request a Hearing on Excusable Neglect

**¶14** Shah next argues that the trial court failed to take evidence to determine whether the Hiatts' tardiness constituted excusable neglect, citing *Commodity Futures Trading Commission*, 646 F.3d at 404-05. Even assuming that excusable neglect is the applicable standard under Arizona law—an issue we do not reach—Shah did not raise this issue in the trial court and did not request an evidentiary hearing. He therefore has waived the issue on appeal. *See Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 116, ¶ 16 (App. 2002); *see also Brake Masters Sys., Inc. v. Gabbay*, 206 Ariz. 360, 365, ¶ 15 (App. 2003) (holding that any error in trial court's failure to hold an evidentiary hearing was waived because the parties did not raise the issue at trial).

## III. Shah Fails to Show that the Claims Process was Meaningless

**¶15** Finally, Shah argues that, "[i]f this Court accepts the premise that all of the Receivership Certificates were themselves 'claims' *nunc pro tunc* to the date of issuance, the claims process was a meaningless exercise" because "repaying the holders of the Receivership Certificates and the Administrative claims would render the Receivership Estate effectively insolvent." A receiver must consider not only the rights of claimants as against the receivership estate, but also as among themselves. *Sisk v. White*, 50 Ariz. 103, 106 (1937). We find that the Receiver met this standard.

**¶16** The Hiatts' claim rights were documented in Receivership Certificate No. 2, and were "deemed secured by the Receivership Assets on a first priority basis" before the trial court entered the Claims Bar Order. Moreover, the Receiver's proposed distribution plan estimated that there would be approximately $54 million in claims while the estate carried a cash balance of approximately $1.3 million. Shah provides no reason—other than the tardiness of the Hiatts' Claim Form, discussed above—that the

---

[5] In so holding, we do not imply that anyone who holds a receivership certificate can ignore claims processes without consequence. We instead hold that the trial court did not abuse its discretion in choosing to allow the Hiatts' claim given the specific facts of this case.

Hiatts' claim, which enjoyed "first priority," should have been subordinated to any other claims.

## ATTORNEYS' FEES AND COSTS ON APPEAL

**¶17**　　　The Hiatts request attorneys' fees and costs on appeal pursuant to A.R.S. § 12-341.01 (Supp. 2015), which permits a discretionary award to the successful party in an action arising out of a contract. The Hiatts say this appeal arises out of the Shah Case settlement agreement, but do not contend that Shah has repudiated the agreement.

**¶18**　　　In determining whether an action arises out of contract, the court is not bound by the form of the pleadings but looks to the nature of the action and the surrounding circumstances. *Marcus v. Fox,* 150 Ariz. 333, 335 (1986). "When the contract in question is central to the issues of the case, it will suffice as a basis for a fee award." *In re Larry's Apartment, L.L.C.,* 249 F.3d 832, 836-37 (9th Cir. 2001). Our courts have broadly interpreted which types of actions arise from a contract. *See, e.g., Marcus,* 150 Ariz. at 335-36 (determining action arose from contract although dispute was not over whether there was a breach of contract, but whether the contract was valid in the first place); *Pinetop Lakes Ass'n v. Hatch*, 135 Ariz. 196, 198 (App. 1983) (determining action to enforce covenant arises out of contract); *Shirley v. Hartford Accident & Indem. Co.*, 125 Ariz. 70, 71 (App. 1979) (permitting an award of attorneys' fees where defendant proved absence of contractual relationship). In this case, the Hiatts' claim was premised on Receivership Certificate No. 2, which is premised on the settlement agreement. Because the Hiatts' claim ultimately arises out of the settlement, this action arose out of contract for the purposes of A.R.S. § 12-341.01(A).

## CONCLUSION

**¶19**　　　Based on the foregoing, we affirm the trial court's ruling and will award the Hiatts their reasonable attorneys' fees and taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama