■ In the Matter of the Liquidation of UNION INDEMNITY INSURANCE COMPANY OF NEW YORK. JAMES P. CORCORAN, Superintendent of Insurance of State of New York, as Liquidator, Respondent; 43 WEST 61ST STREET ASSOCIATES, Appellant. [651 NYS2d 436] —Order, Supreme Court, New York County (Arthur Blyn, Referee), entered on or about March 22, 1995, which, *inter alia,* granted the motion of the Superintendent of Insurance of the State of New York as Liquidator for summary judgment pursuant to CPLR 3212 and sustained and confirmed the disallowance of claimant's claim, unanimously modified, on the law, to deny the Liquidator's motion for summary judgment,

reinstate the claim and remand the matter for further proceedings in accordance herewith, and otherwise affirmed, without costs.

This action arose out of claimant's attempt to recover expenses incurred as a result of an electrical subcontractor's default in performance of its obligations under a subcontract entered into in connection with a renovation project. Union Indemnity Insurance Company, in liquidation, was the surety on both the "subcontract performance bond" and the "subcontract labor and material bond" against which the claims were made. The defaulting subcontractor, LSR Electrical Contracting Corp. (LSR) was the principal on both bonds with the construction manager, HRH Construction Corp. (HRH), designated as obligee on both instruments. The subcontract between HRH and LSR was explicitly incorporated by reference into both bonds by the terms thereof.

Proof of claim was originally filed with the Liquidator on or about July 10, 1986. It was amended on December 5, 1990 and again on December 3, 1992 to include additional expenses. On or about June 24, 1993, eight years after the claim was filed, it was disallowed by the Liquidator for the sole reason of "lack of substantiation". Claimant requested a hearing and by notice of motion dated June 13, 1994, the Liquidator moved for summary judgment. By stipulation so ordered by Supreme Court, New York County (Gammerman, J.), and entered on or about June 22, 1994, the parties agreed to be bound by the appointment of the Referee to "hear and decide" the matter "in the same manner and with all the same powers" as are vested in the Court, and with appeals from the assigned Referee's decisions to be pursued "if and as though such decisions were made and entered by [the] Court".

Contrary to the determination of the Referee, it cannot be concluded as a matter of law that the assumption agreement executed by claimant, HRH and Luis Electrical Contracting Corp., the subcontractor hired to complete the work under the subcontract, operated as a novation with respect to LSR's obligations under the subcontract, which the Liquidator contends would have discharged the surety of its responsibility on the bonds. The assumption agreement, by its terms, was made solely for the benefit of the parties to the agreement and contained no provision which could be construed as a release of LSR from liability for its default under the subcontract (see, *Mountainview Realty Assocs. v Stark*, 190 AD2d 602, 603-604). The subcontract, to which LSR was a party, expressly provided that upon default by LSR, HRH could, *inter alia*, "employ any

other person or persons to finish the work". In addition, the assumption agreement expressly referenced this provision of the subcontract and recited that due to LSR's default HRH was engaging the services of Luis Electrical to finish the work in accordance with the applicable provisions of the subcontract. Thus, at the very least, a triable issue of fact exists as to whether the parties to the assumption agreement, which did not include LSR, intended to release LSR and the surety from all obligations.

It would also be erroneous to conclude that the assumption agreement materially altered the surety's obligations so as to result in the surety's discharge. The rule is clear that a creditor and debtor may not alter the surety's undertaking to cover a different obligation without the surety's consent, and, if they do so, the surety is discharged (*Matter of Union Indem. Ins. Co.*, 220 AD2d 339, 340 [change orders issued by claimant, which substantially expanded the scope of the contract to include work not contemplated in the original contract and which was in fact specifically excluded thereunder, without surety's consent, discharged surety]). Under construction contracts specifically making allowances for alterations during the progress of the work, changes not fairly within the contemplation of the parties at the time the original contract was made, constituting a material departure from the original undertaking, will therefore release a nonconsenting surety from its obligations under its bond (*supra*). In this case, the subcontract explicitly allows for another contractor to be engaged to complete the work upon LSR's default; therefore the actions taken by HRH and the claimant in hiring Luis Electrical to assume LSR's obligations and complete the work under the contract can be said to have been reasonably within the contemplation of the surety when the bonds were issued (*see, State of New York v International Fid. Ins. Co.*, 152 AD2d 77, 81).

Questions of fact also exist with respect to the issue of whether the surety received adequate notice of LSR's default in order to allow it to remedy the default pursuant to the terms of the performance bond. The subcontract between HRH and LSR provided, that upon LSR's default, HRH could discontinue LSR's employment upon three days' written notice. The performance bond stated that "reasonable notice" to the surety was required. While the assumption agreement is dated "as of October 29, 1985", the date upon which the assumption agreement was to take effect cannot be conclusively determined from this record. According to the affidavit of claimant's gen-

eral partner, the assumption agreement was made effective November 13, 1985. Notice of default to LSR from HRH is dated November 8, 1985. Notice to the surety from HRH is dated November 13, 1985, and informs the surety that it notified LSR of its default by letter dated November 8, 1985, that it sent a copy of that letter to the surety and that it was "prepared to retain a substitute electrical contractor in a matter of days to take over the work". By letter dated November 27, 1985, sent to the Liquidator, which referenced the above November 13, 1985 letter, HRH informed the Liquidator that another contractor had at that time already taken over the work. In addition, there is other documentation in the record supporting the conclusion that the assumption agreement was entered into sometime after November 8, 1985. However, none of the evidence conclusively establishes an effective date. Therefore, the issue must be determined at trial.

In addition, questions of fact not addressed by the Referee exist with respect to, *inter alia,* the existence of sufficient substantiation for claimant's claims, the scope of the bond and the Liquidator's contention that HRH engaged in conduct which purportedly impaired the Liquidator's subrogation rights. For the purposes of further proceedings, with respect to the rights of the Liquidator, we note that " '[t]he general rule is that a liquidator of an insurance company "stands in the shoes" of the insolvent, gaining no greater rights than the insolvent had' " (*Matter of Union Indem. Ins. Co.,* 89 NY2d 94, 109, quoting *Stephens v American Home Assur. Co.,* 811 F Supp 937, 947, *vacated and remanded on other grounds* 70 F3d 10). Concur—Sullivan, J. P., Rosenberger, Rubin, Ross and Mazzarelli, JJ.