The Honorable Donna Lee H. WILLIAMS, Insurance Commissioner of the State of Delaware, in her capacity as the Receiver of the Great Atlantic Insurance Company in Liquidation, Appellant and Cross–Appellee,

v.

Joyce WAINSCOTT, in her capacity as the Receiver and/or Deputy Receiver of the Pacific Marine Insurance Company of Alaska in Liquidation, and the Pacific Marine Insurance Company of Alaska in Liquidation, Appellees and Cross–Appellants.

Nos. S–7807, S–7867.

Supreme Court of Alaska.

Feb. 12, 1999.

Gary A. Zipkin, Susan M. West, Guess & Rudd, Anchorage, and Diane J. Bartels, Bartels & Bartels, Wilmington, Delaware, for Appellant and Cross–Appellee.

Mark A. Sandberg, William M. Wuestenfeld, Sandberg, Wuestenfeld & Corey, Anchorage, for Appellees and Cross–Appellants.

Ronald L. Baird, Office of Ronald L. Baird, Anchorage, and Victoria L. Vreeland, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, P.L.L.C., Seattle, for Amicus Curiae Deborah Senn.

Before MATTHEWS, Chief Justice, and COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

MATTHEWS, Chief Justice.

## I. INTRODUCTION

This case concerns the attempts of Great Atlantic Insurance Company (GAIC) to recover nearly $1.4 million in reinsurance claims from Pacific Marine Insurance Company of Alaska (PacAk). In 1989 both companies were declared insolvent and placed into liquidation. The deadline to file claims in the PacAk estate was March 1, 1990. In 1994 GAIC submitted four claims to PacAk which the PacAk Receiver denied. The superior court upheld the Receiver's decision, concluding that it was supported by substantial evidence. Because we hold that the superior court erred in applying a deferential standard of review, we reverse and remand.

## II. FACTS AND PROCEEDINGS

### A. Facts

PacAk was incorporated in Alaska in 1979 as United Marine Insurance Company and later renamed Pacific Marine Insurance Company. In late 1981 or early 1982 Pacific Marine Insurance Company (PacWa) was incorporated in Washington. The Alaska corporation was renamed Pacific Marine Insurance Company of Alaska. PacWa became the parent corporation of PacAk. PacAk and PacWa shared officers and employees, as well as offices in Seattle, from 1982 to 1985. Donald Marinkovich was the president of both corporations.

The present conflict centers around a Quota Share Reinsurance Agreement (treaty) executed on December 15, 1982.[1] The preamble to the treaty stated that it was entered into between GAIC and "PACIFIC MARINE INSURANCE COMPANY OF ALASKA, Anchorage, Alaska, its parent and/or affiliated Companies [Reinsurer]."

The treaty was signed by GAIC and Donald Marinkovich, as president of PacAk. The treaty required PacAk to reinsure 100% of all policies issued by GAIC that were produced by general agent Thompson Insurance Enterprises, Inc. (THOMCO) in Louisiana.[2] These policies included policies covering claims under the federal Longshoremen's and Harborworkers' Compensation Act.[3]

One day earlier, on December 14, PacAk and PacWa had entered into a contract for quota share treaty reinsurance. Under this contract, PacAk transferred to PacWa its entire interest and liability in all present and future policies including all "reinsurances."

On December 16 GAIC, PacAk, and THOMCO entered into a Managing General Agency Agreement. This agreement authorized THOMCO to issue policies in Louisiana and to collect premiums for both GAIC and PacAk. The treaty covered only policies generated under this Managing General Agency Agreement.

In January 1983 PacAk entered into an adjustment agreement with F.A. Richard & Associates, Inc. This agreement authorized F.A. Richard to adjust claims arising under the THOMCO policies.

In 1985 PacWa sold PacAk and the December 14, 1982 quota share treaty agreement between those entities was terminated.[4] During the life of the treaty, 267 policies were ceded and $4,712,850 in premiums was paid. The four claims at issue arose from Longshoremen's Act policies generated by THOMCO in Louisiana.

### B. Proceedings

All three companies were declared insolvent and ordered liquidated in 1989: PacWa on June 7 in Washington; PacAk on July 12

---

1. The disputed agreement called for "treaty" reinsurance because it covered multiple policies. More precisely, the agreement was a "quota share" treaty, meaning that it covered a proportion of the reinsured's losses.

2. PakAk "its parent and/or affiliated Companies" also "retroceded" to GAIC a 50% quota share of the policies ceded under the treaty in a separate agreement between PacAk and GAIC. The retro-

cession agreement was also made on December 15.

3. As of the date of the agreement PacAk, but not PacWa, was an authorized reinsurer under the Longshoremen's Act. On January 1, 1983, PacWa became an authorized issuer under the Act.

4. In 1988 PacWa apparently reacquired PacAk, again becoming its parent company.

in Alaska; and GAIC on August 11 in Delaware.

The July 1989 Order of Liquidation for PacAk set a deadline, or "bar date," of March 1, 1990, for submission of all claims against the PacAk estate. The order required PacAk to provide notice of the liquidation order to several classes of claimants, including those "who might reasonably be expected to have a claim against PACAK." The order further required PacAk to provide notice of the deadline for filing claims and the procedure for filing claims to policyholders and those who might have claims against policyholders. Claims were generally to be submitted on a "proof of claim" form to the Receiver.

On August 1, 1989, PacAk mailed a claim file regarding injured worker Alex Bourg (the Bourg file) to GAIC because GAIC was the "insuring company." This file in turn had just been received from PacWa which represented it to be a claim against the PacAk estate. Included with the Bourg file was a letter from PacAk Deputy Receiver Emerson Adams advising GAIC of PacAk's Order of Liquidation and that PacAk was no longer paying claims. PacAk mailed the Bourg file to GAIC's then-current Delaware address. GAIC received the Bourg file and Adams's letter. On August 11 PacAk conducted a mass mailing of proofs of claims and notices of the deadline to file claims. PacAk included GAIC in the mailing because it was listed as a "producer" in PacAk's records. The notice was mailed to GAIC's previous New York address and was returned to PacAk as undeliverable.

GAIC failed to file a claim with PacAk for any of the four claims by the March 1, 1990 bar date. GAIC apparently first learned of the bar date in a telephone call to the PacAk Receiver on August 31, 1992. On March 14, 1994, GAIC submitted a claim to PacAk for $368,706.46 in losses resulting from the Bourg claim. PacAk denied GAIC's claim. PacAk asserted that PacWa reinsured the claim, rather than PacAk,[5] and that the claim was untimely because it was submitted after

the bar date. GAIC subsequently amended its claim to add three additional claims, for a total of $1,397,525.32.

GAIC objected to the denial of its claim and a hearing was held in the superior court. The superior court considered documentary evidence submitted by both parties, the testimony of an expert witness on behalf of each party, and heard oral argument. The court concluded that it would not disturb the Receiver's decision to deny GAIC's claim as untimely because it was supported by substantial evidence.

GAIC moved for clarification and reconsideration. The superior court denied GAIC's motion and entered a Partial Final Judgment in favor of PacAk. In this order, the court summarized the evidence presented and again concluded that the PacAk Receiver had substantial evidence to deny GAIC's claims.

PacAk moved for Civil Rule 82(b)(2) attorney's fees. The superior court granted the motion. GAIC moved for reconsideration. The court granted GAIC's motion and vacated its earlier order awarding attorney's fees to PacAk.

GAIC appeals. PacAk cross-appeals the denial of attorney's fees.

### III. ISSUES

GAIC's contentions on appeal are as follows:

A. The trial court erred in reviewing the denial of its claim under the substantial evidence test rather than conducting a de novo fact-finding hearing.

B. The trial court erred in determining that GAIC was not entitled to notice of the deadline to file claims against PacAk.

C. The PacAk Receiver did not comply with the statutory notice requirements with respect to GAIC.

D. Even if the statutory notice requirements were satisfied, GAIC should be excused from compliance with the bar date because of an agreement between the PacAk

---

**5.** PacWa has denied GAIC's claims on the grounds that PacAk was the reinsurer under the

treaty.

and PacWa Receivers that claims timely filed in the Washington proceeding would be considered timely in the Alaska proceeding.

E. PacAk is the initial reinsurer under the treaty.

We agree with the first two contentions. The others must be determined by the superior court on remand. Our disposition on GAIC's appeal moots PacAk's cross-appeal regarding attorney's fees.

## IV. DISCUSSION

### A. The Superior Court Erred in Applying the Substantial Evidence Test.[6]

■ The parties dispute the standard that the superior court should have used to review the Receiver's decision to deny GAIC's claims. The superior court deferentially reviewed the Receiver's conclusions to determine whether they were supported by "substantial evidence," citing case law involving administrative agencies.[7]

GAIC asserts that Alaska's insurer liquidation statutes require the superior court to conduct an independent review of its claim. GAIC relies on AS 21.78.010, which provides that the superior court has "exclusive original jurisdiction" over insurance insolvency proceedings, and AS 21.78.170, which provides that the superior court may allow, allow in part or disallow a disputed claim after reviewing the Receiver's recommendation. Further, GAIC argues that the Receiver lacks the authority to conduct a fact-finding

hearing, thus thwarting the development of a reviewable record.

PacAk views the actions of the Receiver as "closely analogous" to those of a master because the Receiver has "broad discretion to operate within the area of its expertise." Thus, PacAk encourages us to find that the substantial evidence test was appropriate.

■ We agree with GAIC's interpretation. The substantial evidence test is employed when courts review an administrative determination.[8] Our statutes do not require a receiver to conduct a hearing on claims. Instead, the receiver is authorized to review, investigate, and compromise claims and ultimately either deny them or recommend to the court that they be paid. See AS 21.78.293(a). When a claim is denied, the claimant has sixty days to file an objection with the receiver. See AS 21.78.170(c). If the receiver does not change the denial after the objection is filed, the receiver must "ask the court for a hearing as soon as practicable." AS 21.78.170(d). The nature of this hearing is not specified. However, since no hearing is required on the claim before the receiver, due process requires a de novo evidentiary hearing before the court. See Wright v. Black, 856 P.2d 477, 480 (Alaska 1993); Aguchak v. Montgomery Ward Co., 520 P.2d 1352, 1356 (Alaska 1974).

This interpretation is consistent with the evident legislative intent. Rehabilitation and liquidation proceedings are creatures of statute.[9] See AS 21.78.010–.330. The superi-

---

6. Whether the superior court applied the proper standard of review to the Receiver's decision presents a question of law to which we apply our independent judgment. See Butler v. Dunlap, 931 P.2d 1036, 1038 (Alaska 1997); McCoy v. McCoy, 926 P.2d 460, 463 (Alaska 1996).

7. In a dispute between PacAk and PacWa involving similar issues, the superior court conducted a de novo determination of the claims presented, giving no deference to the Receiver's decision and applying the preponderance of the evidence standard. The dispute occurred within the ongoing receivership proceedings under consideration in this appeal. The court stated:
   1. The Superior Court is the trier of fact and exercises original jurisdiction over the disputed claims of PacWa against the PacAk receivership estate.
   2. PacWa, the claimant, must establish its claim by a preponderance of the evidence.

3. The Superior Court will enter findings of fact, conclusions of law, and judgment and decree following the trial/evidentiary hearings on PacWa's disputed claims against the PacAk receivership estate.
   The superior court also allowed PacWa and PacAk to conduct discovery and present testimony and evidence "in accordance with the civil rules."

8. See, e.g., Nyberg v. University of Alaska, 954 P.2d 1376, 1378 (Alaska 1998); Jager v. State, 537 P.2d 1100, 1107 (Alaska 1975).

9. The parties recognize that case law addressing this issue is sparse. GAIC and PacAk point to only one unpublished decision to elucidate the standard of review, State ex rel. McReynolds v. Petroleum Marketers Mutual Insurance Co., No. 01–A–01–9405–CH00211, 1994 WL 581465

or court's jurisdiction is limited to that expressly provided in chapter 78. *See* AS 21.78.020(c). Alaska Statute 21.78.010(a) provides that the court "is vested with exclusive original jurisdiction of delinquency proceedings under this chapter, and is authorized to make all necessary and proper orders to carry out the purposes of this chapter." Original jurisdiction is "independent jurisdiction, one not based on or limited to review of another court's judgment or proceeding." 20 Am.Jur.2d *Courts* § 66 (1995). By contrast, appellate jurisdiction is "the jurisdiction of a superior court to review the final judgment, order, or decree of an inferior court on the record made in the inferior tribunal." *Id.* The grant of original jurisdiction in AS 21.78.010(a) evidences the legislature's intent for the superior court to act as the initial tribunal regarding a contested claim.

Moreover, we view the Receiver's role as closer to that of a personal representative in probate proceedings than to that of a master. A personal representative, like the Receiver, marshals the assets of the estate and distributes them to the proper claimants. *See* A. James Casner & Jeffery N. Pennell, *Estate Planning* § 2.7.5 (6th ed.1997). Similarity is also evident in the procedures governing disputed claims. The probate statutes require the personal representative to allow or disallow a properly presented claim. *See* AS 13.16.475. If a claimant objects to the personal representative's disallowance of the claim, it may petition the superior court for allowance, or sue the personal representative. *See id.* In either case, the superior court must conduct a de novo hearing including, if requested, a jury trial. *See* AS 13.06.085; *Cavanah v. Martin*, 590 P.2d 41, 41–42 (Alaska 1979) (preponderance of evidence standard applies to hearings on claim).[10]

■ PacAk argues that, even if the superior court erred by applying the substantial evidence standard, it entered independent findings of fact that can be reviewed for clear error. We disagree. The trial court never receded from its position that it was reviewing the record only to determine whether substantial evidence existed to support the Receiver's decision. Further, the facts recited by the court do not resolve the disputed issues in this case.

In its initial order affirming the denial of GAIC's claim, the superior court simply concluded that substantial evidence supported the Receiver's conclusion that (1) GAIC had received proper notice and (2) its claim was untimely. In the order on reconsideration the court, in ten numbered paragraphs, recited facts which it found that the record estab-

(Tenn.App. Oct.21, 1994). In *Petroleum Marketers*, the trial court upheld the Receiver's decision to deny a late claim because the court concluded that it could not "substitute its judgment for that of the Receiver." *Id.* at *1. Reversing, the Tennessee Court of Appeals observed that the statutory scheme granted the trial court general supervision over the receivership administration as well as the authority to "approve, disapprove, or modify the liquidator's report of claims." *Id.* at *2. The court then addressed the merits of the claimant's excusable neglect argument after "conceding" that the trial court had the power to substitute its judgment. *See id.* We note that the same court subsequently held that the receivership statutes did not abridge the traditional powers of the superior court because they were devoid of any limitations on the standard of review. *See State ex rel. Sizemore v. United Physician Ins. Risk Retention Group*, No. 01–A–01–9610–CH00449, 1997 WL 181526, at *1–3 (Tenn.App. Apr.16, 1997).

PacAk also cites two cases to emphasize that the Receiver has "broad discretion" to act; however, these cases are inapposite because they do not address the Receiver's authority to resolve disputed claims. *See Kentucky Central Life Ins. Co. v. Stephens*, 898 S.W.2d 83, 85–86 (Ky.1995) (applying abuse of discretion standard to receiver's judgment to sell real estate assets); *Minor v. Stephens*, 898 S.W.2d 71, 83 (Ky.1995) (applying abuse of discretion standard to Insurance Commissioner's decision to liquidate insurance company).

10. *Cf. Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561, 572–79, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989) (holding that court should review Receiver's decision de novo since statute did not provide for judicial review under Administrative Procedure Act); *Academy Life Ins. Co. v. Odiorne*, 165 Ariz. 188, 797 P.2d 727, 734 (Ariz.App.1990) (remanding to trial court for additional evidence of reinsurance agreement coverage where two receivers disputed illegality of agreement); *In re Liquidation of Union Indem. Ins. Co.*, 234 A.D.2d 120, 651 N.Y.S.2d 436, 437–38 (1996) (holding that where unresolved questions of fact remained over proper substantiation of the claim and liability, the issues "must be determined at trial").

lished. The facts set out do not resolve such important issues as timeliness; whether GAIC received notice of the bar date; whether the notice of August 11, 1989, was sent to GAIC's last known address; and whether the late filing was excused by the agreement between the Receivers that claims timely presented in one receivership would be considered timely in the other. Further, the court concluded the order on reconsideration, as the court did the initial order, by stating that the Receiver had substantial evidence to determine that GAIC's claim was untimely.

### B. *GAIC Was Entitled to Notice of the Deadline to File Claims against PacAk.*

■ The superior court determined that, as a matter of law, GAIC was not entitled to notice of the deadline for filing claims because GAIC "was not a policyholder nor did it have any claims against one." The Order of Liquidation for PacAk provided:

12. The Receiver shall give or cause to be given notice of the entry of this order as follows:

A. By first class mail to all policyholders as of the entry of this order and to all persons known, or reasonably expected to have claims against the policyholders of PACAK....

. . . .

E. By first class mail to all other persons who might reasonably be expected to have a claim against PACAK.

The order specified that only the persons listed in paragraph 12(A) were entitled to notice of the filing procedures for claims, including the March 1, 1990 deadline.

The Order of Liquidation did not conform to the controlling statute. At the time of the order, AS 21.78.290(b) provided:

After the entry of the order of insolvency, regardless of prior notice that may have been given to creditors, the director shall notify all persons who *may have claims against the insurer* to file the claims with the director, at a place and within the time specified in the notice, or that the claims shall be forever barred. The time specified in the notice shall be as fixed by the court for filing claims and may not be less than six months after the entry of the order of insolvency. The notice shall be given in the manner and for the reasonable period of time that may be ordered by the court.

(Emphasis added.)[11] The liquidation order too narrowly limited persons entitled to notice of the bar date. GAIC was entitled to notice of both the liquidation order and of the time within which to file claims if it "may have had a claim" against PacAk.

The evidence unquestionably demonstrates that PacAk should reasonably have known that GAIC "may have had" a claim against it. The Receiver admits that PacWa forwarded the Bourg file to PakAk August 1, 1989, with a representation that PakAk was liable on the claim. She states that "the computer showed this claim to be a PacAk liability." PakAk forwarded this file to GAIC. GAIC was therefore entitled to notice of the bar date under AS 21.78.290(b).

### C. *The Superior Court Should Determine Whether PacAk Complied with the Notice Requirements in AS 21.78.290(b).*

Since AS 21.78.290(b) required PacAk to send notice of the bar date to GAIC, the superior court must determine whether PacAk complied with the statutory notice requirements. PacAk presented evidence to the superior court that it mailed notice of the bar date and a proof of claim to GAIC twice: first on August 1, 1989, along with the Bourg claim file, and again on August 11 in a mass mailing of claim forms.

#### 1. *The August 1, 1989 mailing*

GAIC concedes receiving the August 1 mailing, along with notice of the order of PacAk's liquidation, but asserts that notice of the deadline was not included with the file. The superior court did not address whether GAIC received notice of the bar date with

---

**11.** The statute was amended in 1990 to require notice by first class mail to the insurance director, guaranty associations, insurance agents and "all persons known or reasonably expected to have claims against the insurer, including all policyholders...." AS 21.78.290(a).

the Bourg claim file; its only conclusion with respect to this issue was that the Receiver had substantial evidence to determine that GAIC received "the notices required either by law or by express legal relationship of PacAk and GAIC." On remand, the superior court should determine whether PacAk's August 1, 1989 mailing fulfilled the requirements of AS 21.78.290(b).

### 2. *The August 11, 1989 mailing*

■ On August 11 PacAk mailed notices of the Order of Liquidation and instructions for filing claims to all companies listed as "producers" in its records, including GAIC. PacAk mailed the notice to GAIC's New York address; it was returned as undeliverable since GAIC had relocated to Delaware.[12] Both parties agree that GAIC did not actually receive the August 11 mailing.

GAIC argues that PacAk failed to send the August 11 notice to its "last known address" and that therefore this mailing failed to satisfy AS 21.78.290.[13] We agree.

*Bunner v. Imperial Insurance Co.*, 181 Cal.App.3d 14, 225 Cal.Rptr. 912 (Cal.App. 1986), is instructive. There, interpreting the California liquidation statutes, the court addressed the requirement that notice of an insurer's insolvency and the deadline for filing claims be mailed to a claimant's "last known address." *Id.* at 915. The Commissioner of Insurance mailed the required notice to the claimant; the mailing was not returned. *Id.* at 914. The claimant, however, had previously moved and did not receive the notice. *Id. Bunner* held that the mailing failed to satisfy the last known address requirement since the claimant's current address was "readily ascertainable" from county telephone listings and professional listings. *Id.* at 914, 917. Thus, a late claim could be asserted. *Id.* at 917.

GAIC points out that the Receiver had previously mailed the Bourg claim file on August 1 and a second letter on August 7 requesting a copy of the Bourg file to its current Delaware address. The Receiver's secretary, Sarah Baskurt, mailed the August 1 and 7 letters to GAIC using an address from recent correspondence. Baskurt obtained GAIC's New York address for the August 11 mailing from a computer-generated list of agents dating from September 1988. With minimal effort, PacAk could have obtained GAIC's current address by cross-referencing GAIC's recent correspondence in its possession; a resort to external sources was unnecessary. In view of the fact that PacAk could have "readily ascertained" GAIC's address had it simply examined its own files after the notice was returned, and the fact that AS 21.78.290 places the responsibility on the Receiver to prepare and send the notice, we hold that PacAk failed to send the August 11, 1989 notice to GAIC's last known address.[14] *Cf. In re Estate of Evans*, 901 P.2d 1138, 1143 (Alaska 1995) (rejecting inquiry notice as substitute for statutory notice requirement in probate proceedings); *Bunner*, 225 Cal.Rptr. at 914.

### D. *If the Superior Court Finds That PacAk Complied with AS 21.78.290(b), It Should Determine Whether GAIC's Late Filing Is Excused Because It Was Timely Submitted in the PacWa Estate.*

Even if GAIC received proper statutory notice of the bar date, the superior court should determine whether GAIC's accepted filing of the same claim with the PacWa estate excuses any late filing with the PacAk estate. GAIC argues that its claims fall within an established "protocol" between PacAk and PacWa to accept claims timely filed with the wrong receivership without penalty.

---

12. GAIC claims in its opening brief that the move took place on November 17, 1988.

13. At the time of the entry of the Order of Liquidation for PacAk, AS 21.78.290(b) provided that notice "shall be given in the manner and for the reasonable period of time that may be ordered by the court." The order prescribed that notice should be sent by first class mail to the "last known address, where available" for policyhold-

ers and those with claims against policyholders (those claimants in paragraph 12(A)).

14. In 1990, the legislature amended AS 21.78.290 to require that notice be sent by first class mail to "the [claimant's] last known address as indicated by the records of the insurer." AS 21.78.290(a)(4). In addition, the claimant now "has a duty to keep the receiver informed of a change of address." AS 21.78.290(b).

GAIC explains that such an agreement arose from the confusion surrounding the previous interrelationship of the two companies. GAIC points to an affidavit executed by former PacWa Receiver Virgil McQueen in which McQueen states that "Wainscott ... and I ... agreed that claims which were filed on time but which were filed with the wrong receivership would be accepted as timely filed by the correct receivership without penalty." PacAk does not dispute that such an agreement existed but argues that GAIC needed to at least have submitted a timely proof of claim in the PacWa estate.

On December 9, 1991, GAIC filed a claim for reinsurance with PacWa for the same four disputed claims.[15] Although GAIC submitted the claims after the PacWa bar date, PacWa accepted GAIC's claims as timely because GAIC was secured by a letter of credit. In September 1992 GAIC's Deputy Receiver, Frank MacArtor, wrote the PacAk Receiver, requesting that she accept GAIC's claims as timely because GAIC had "established a Proof of Claim # 1–000001 with PACMAR of Washington as of November 17, 1988, based on a secured Letter of Credit." The PacAk Receiver replied in October that she would accept GAIC's claim as timely if GAIC had filed a proof of claim form with the PacWa estate prior to March 1, 1990. PacWa's accounting manager, Charles Glass, wrote back that PacWa had not required GAIC to file a proof of claim because GAIC was secured by a letter of credit.

Since GAIC was excused from submitting a timely claim in the PacWa estate, the superior court should determine whether this excuses a late filing with PacAk. In making this determination, the court should determine the meaning of the agreement between the Receivers in light of its purposes.

E. *If GAIC Was Not Notified of the Bar Date or If Timely Filing Was Excused, the Trial Court Should Determine Whether PacAk Is Liable as a Reinsurer.*

GAIC argues that we should direct the superior court to conclude that PacAk is liable as a matter of law on the policies in question. GAIC's argument is essentially that PacAk, not PacWa, was the contracting party with respect to the policies produced by THOMCO. Further, GAIC contends that the affairs of PacAk and PacWa were so intermingled that it is just and proper to hold both companies responsible.

PacAk argues that the trial court has already determined as a matter of fact that PacAk was not the reinsurer. It relies on a footnote in the court's opinion on reconsideration which states as follows:

> On December 15, 1982, Great Atlantic Insurance Company (GAIC) entered into the Quota Share Treaty. The treaty called for GAIC to cede 100% of the business covered by the treaty to "the Reinsurer." The Preamble defined the Reinsurer as "Pacific Marine Insurance Company of Alaska, Anchorage, Alaska, its parent and/or its affiliated companies." According to the expert hired by the Receiver to assist in evaluating the GAIC claim, that definition of the Reinsurer is broad enough to allow either PacAk or PacWa to assume reinsurance under the treaty. The treaty had an inception date of 10/1/82 and was cancelled on 6/1/84. GAIC ceded 267 policies under the treaty with a total premium of $4,712,850. Every GAIC policy and all premium were ceded to PacWa under this treaty. PacWa received the entire $4,712,-850 in premiums paid. PacAk received no premium whatsoever. The Annual Statements of GAIC show PacWa as assuming the reinsurance obligations under this treaty.

> The Annual Statements of PacWa show PacWa as assuming the reinsurance obligations under this treaty. The Annual Statements of PacAk do not mention this treaty. All of this is consistent with the manner in which the reinsurance premium was accounted, with PacAk receiving nothing.

---

**15.** This claim reflects the confusion of entities which gave rise to this case for it is addressed to "Pacific Marine Insurance Company of Alaska in Liquidation" but the address is PacWa's. In the body of the claim the reinsurer is referred to simply as PACMAR, a designation which could be applicable either to PacAk or PacWa.

We do not believe that this footnote was meant to be a finding that PacAk was not a reinsurer of the claims in question. The court also stated that "given the untimeliness of GAIC's claim, the court does not reach the other issues raised by GAIC." Further, GAIC's claim appears to be strong.[16] Premium allocation and preparation of annual statements were matters internal to PacWa and PacAk over which GAIC had no control. They do not necessarily determine whether PacAk was a reinsurer.[17] The footnote taken alone and without discussion of the evidentiary basis for GAIC's claim fails to establish that PacAk was not the initial reinsurer.

On the other hand, we think that it would be inappropriate for this court to rule that PacAk was the reinsurer at this juncture. That is the trial court's responsibility as fact finder. As we view the record, that responsibility has yet to be exercised.

## V. *CONCLUSION*

We REVERSE the judgment of the superior court and REMAND for de novo consideration of this case.

---

16. GAIC supports its claim, in part, as follows: [T]he signature line on the PacAk–GAIC Treaty indicates that PacAk is the reinsurer. In addition, PacAk, but not PacWa, is a party to the Managing General Agency Agreement and the claims adjusting agreement. In addition, the GAIC Receiver requested that various former parties involved in the negotiation, drafting, or implementation of the PacAk–GAIC Treaty review the treaty and provide their recollections on the identity of the reinsurer.

Mr. Jack Sullivan, the reinsurance intermediary who drafted the treaty, confirmed in a June 22, 1995, affidavit that PacAk is the reinsurer under the PacAk–GAIC Treaty. Mr. Ben C. Roark, the former Controller and Treasurer for PacAk and PacWa, the PacAk officer responsible for implementing the accounting functions of the company, states in a January 4, 1995 affidavit that PacAk is the reinsurer under the PacAk–GAIC treaty. Finally, Mr. Alan Bottomley, a reinsurance consultant who prepared an endorsement to the PacAk–GAIC Treaty, has stated in a June 22, 1995 affidavit that PacAk is the reinsurer under the treaty.

On the effective date of the termination of the PacAk–GAIC Treaty, PacAk procured Certificates of Guaranty on two of the underlying policies at issue. Although the certificates were only to provide coverage for losses which took place on or after June 1, 1984 (and, therefore, do not apply to the losses for which GAIC is seeking reinsurance), the certificates provided coverage to "PakAk" for two of the same policies which PacAk now claims are not its liability as a reinsurer.

17. Witnesses Bottomley and Marinkovich ascribe the premium allocation to the December 14, 1982 agreement in which PacWa automatically assumed all reinsurance assumed by PacAk. Under this view, PacAk would be the initial reinsurer whose reinsurance in turn was assumed by PacWa.