**In re LIFE INSURANCE COMPANY OF ALASKA, in receivership.**

No. S–10503.

Supreme Court of Alaska.

Aug. 22, 2003.

Timothy A. McKeever and Colby J. Smith, Holmes, Weddle & Barcott, Anchorage, for Appellant Carpenter Financial Group, Inc.

Mark A. Sandberg, Sandberg, Wuestenfeld & Corey, Anchorage, for Receiver Robert A. Lohr, Director, State of Alaska, Division of Insurance.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I.  INTRODUCTION

During liquidation of a life insurance company, a claimant sought recovery of $500,000 which the claimant contended it had paid to

the insurer in exchange for a surplus note. The receiver denied the claim. When the claimant objected to the denial, the superior court conducted an evidentiary hearing; finding that the claimant had been repaid, it denied the claim. The claimant raises two arguments on appeal. Because AS 21.78.170(d) applied to the superior court's review of the denied claim, we first reject the claimant's argument that the superior court's failure to rule on the claim within 120 days after the receiver denied it had the effect under AS 21.78.293(b) of automatically approving the claim. And because the superior court conducted a de novo evidentiary hearing and entered findings of fact when it ruled against the claimant, we also reject its argument that the superior court erred by applying a deferential standard of review to the receiver's denial. We therefore affirm.

## II. FACTS AND PROCEEDINGS

The Life Insurance Company of Alaska (LICA) was an Alaska corporation authorized to transact the business of life insurance in Alaska. In 1992 the Alaska Pacific Acquisition Group purchased a controlling interest in LICA. In June 1994 Daniel Carpenter, one of the two founding partners of Alaska Pacific, acquired Alaska Pacific, giving Carpenter a controlling interest in LICA.

LICA was experiencing serious financial difficulty by June 1994 and was in danger of being shut down by the Alaska Division of Insurance. In an attempt to resolve LICA's problems Carpenter Financial Group, Inc. (another entity controlled by Daniel Carpenter) wrote two checks to LICA, one for $500,000 and one for $600,000, in exchange for two surplus notes from LICA for the same amounts.[1] The surplus notes were dated June 30, 1994. But LICA's problems continued, and in September 1994 the corporation was involuntarily dissolved by the state. LICA sold most of its existing policies to another insurer, and in January 1996 the state suspended LICA's authority as an insurance company in Alaska.

The superior court appointed the Director of the Alaska Division of Insurance as the receiver of LICA. The receiver is overseeing the liquidation of LICA, and must periodically report to the superior court.[2] Parties with claims against an insurer being liquidated file proof of their claims with the receiver, who approves or denies the claims and recommends distribution of the liquidated company's assets.[3] LICA's only remaining asset is its state-required statutory deposit of $300,000.

Carpenter Financial asserted a claim against LICA for $500,000 for repayment of one of the surplus notes. (Carpenter Financial explained that it decided not to file a claim for repayment of the other surplus note because LICA's assets are only $360,000.) The receiver denied the claim in February 2001 after determining that it was not supported by substantial evidence. The two checks from Carpenter Financial to LICA were both dated June 30, 1994. LICA's quarterly report for the quarter ending June 30, 1994 showed $1,100,000 in proceeds from the sale of surplus notes. But neither check had been deposited into LICA's accounts by June 30, 1994. The $500,000 check was not deposited into LICA's account until September 19, 1994. On September 22 $500,000 was transferred from LICA's account into an unknown account at the same bank via a customer transfer debit. The next day, $600,000 was deposited into LICA's account.

In April 2001 Carpenter Financial requested reconsideration of the receiver's February 2001 decision.

Alaska Statute 21.78.170(d) provides that "[i]f an objection is filed with the receiver

---

1. A surplus note is somewhat similar to a corporate bond; surplus notes are issued by insurance companies to obtain capital. An insurance company can only repay a surplus note from funds in its surplus, i.e., the amount by which its assets exceed its liabilities. By their terms, the two LICA surplus notes could only be repaid from "excess surplus," which the notes defined as "surplus in excess of $300,000 capital and surplus."

2. AS 21.78.293(a) provides in part: "As soon as practicable, the receiver shall present to the court a report of the claims against the insurer, along with the receiver's recommendations."

3. AS 21.78.010–.330.

and the receiver does not alter the denial of the claim as a result of the objection, the receiver shall ask the court for a hearing as soon as practicable." The receiver did not alter his denial of Carpenter Financial's claim after Carpenter Financial filed its objection. On July 13, 2001 the receiver filed with the superior court a report entitled "Second Report on Claims Recommending Approval of Accepted Claims and A Request for Partial Distribution." The receiver's report noted that "[f]our claimants whose claims were denied have filed an objection to the denial. The Receiver will request that the court set hearings on these claims in a separate motion." On August 24, 2001 the receiver asked the court to set hearings. The superior court scheduled a hearing on Carpenter Financial's claim for January 2002.

On November 21, 2001 Carpenter Financial filed a motion for summary judgment asking the superior court to treat Carpenter Financial's claim as approved. Carpenter Financial's motion argued that because the court had not ruled on Carpenter Financial's claim within 120 days after the receiver filed its July 13 report, AS 21.78.293(b) required the court to order the receiver to approve Carpenter Financial's claim. The superior court denied Carpenter Financial's motion.

The superior court then conducted the scheduled hearing on the merits of Carpenter Financial's claim. The state and Carpenter Financial both participated. At the conclusion of the hearing, the court denied Carpenter Financial's claim. In the course of doing so, the court stated from the bench that "The question is whether there's *substantial evidence* that the receiver's decision to disallow the $500,000 claim . . .—whether there was *substantial evidence* to support that conclusion to deny it." (Emphasis added.)

Carpenter Financial appeals the denial of its motion for summary judgment. Carpen-

ter Financial also argues that the superior court applied the wrong standard of review at the evidentiary hearing, and that this error denied Carpenter Financial due·process because the court was required to conduct a de novo hearing. Alternatively, Carpenter Financial asks us to remand to the superior court with instructions to conduct a new hearing applying the proper standard of proof.

## III. DISCUSSION

### A. Standard of Review

▪▪▪ We review a grant or denial of summary judgment de novo.[4] Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[5] Carpenter Financial's argument that the superior court should have granted its summary judgment motion turns on a question of statutory interpretation. "We apply our independent judgment to questions of statutory interpretation."[6] We will "adopt the rule of law that is most persuasive in light of· precedent, reason, and policy."[7]

▪▪▪ The question whether the superior court applied the proper standard of review in denying Carpenter Financial's claim is a question of law to which we apply our independent judgment.[8]

### B. Applicability of AS 21.78.293(b) to a Superior Court Appeal of a Receiver's Denial of Claim

▪▪▪ Carpenter Financial first argues that because the superior court did not disapprove the claim within 120 days after the receiver submitted the claim report to the court, AS 21.78.293(b) requires that the claim must be treated as allowed. Subsection .293(b) provides for the automatic approval of "[c]laims in a report that are not disapproved

---

**4.** *Cabana v. Kenai Peninsula Borough,* 50 P.3d 798, 801 (Alaska 2002).

**5.** *United Airlines, Inc. v. State Farm Fire & Cas. Co.,* 51 P.3d 928, 932 (Alaska 2002).

**6.** *Jerue v. Millett,* 66 P.3d 736, 740 (Alaska 2003).

**7.** *Id.* (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**8.** *Williams v. Wainscott,* 974 P.2d 975, 978 n. 6 (Alaska 1999).

by the court" within 120 days after the receiver submits its report.[9]

Carpenter Financial relies on the principle of statutory construction that the initial inquiry must focus on the plain meaning of the statute, and argues that we must apply the plain meaning "so long as construction in accordance with the literal language of the statute does not prove absurd or meaningless."[10]

On its face and read in isolation, the second sentence of AS 21.78.293(b) might seem to apply to denied claims. If so, because the superior court did not disapprove Carpenter Financial's denied claim within 120 days after the receiver submitted its report to the court, subsection .293(b) would seem to require that Carpenter Financial's claim should be treated as allowed.

In support of its statutory argument, Carpenter Financial asserts that because the first sentence of AS 21.78.293(b) speaks of "allowed claims," the unqualified reference to "claims" in the second sentence must refer to all claims, whether the receiver allowed them or denied them. It consequently reasons that even denied claims must be treated as allowed under AS 21.78.293(b) if the court fails to reject them within 120 days after the receiver submits them.

■ We are not persuaded by this construction. Per the second sentence of AS 21.78.293(b), "[c]laims in a report that are not disapproved by the court" within 120 days are treated as allowed. Per the first sentence, however, the superior court must disapprove unsubstantiated claims when they are "*allowed* claims" but has no comparable duty to disapprove unsubstantiated disallowed claims. Thus, claims which the receiver has *disallowed* are not subject to the approval-by-inaction provision of AS 21.78.293(b). Or, as the superior court ruled, "the second sentence describes the automatic approval of claims already approved by the [r]eceiver." Therefore, the plain meaning Carpenter Financial would attribute to subsection .293(b) is far from plain, and is contrary to a careful reading of the entire subsection. We conclude that the automatic approval rule of AS 21.78.293(b) only applies to allowed claims.

Alaska Statute 21.78.170(d) concerns judicial review of denied claims.[11] That subsection confirms the implausibility of Carpenter Financial's statutory argument and confirms our conclusion that AS 21.78.293(b) only applies to judicial review of allowed claims. We agree with the receiver's contention that AS 21.78.170(d), rather than AS 21.78.293(b), controls challenges to denials of claims. Carpenter Financial's argument—that all claims not rejected by the superior court within 120 days after the receiver submits them are automatically approved—would strip all meaning from subsection .170(d).

Carpenter Financial asserts that subsection .293(b) merely provides some specifics for the procedure set forth in subsection .170(d). It argues that subsection .293(b) simply defines the "as soon as practicable"

---

9. The full text of AS 21.78.293(b) provides:

> The court shall review and adopt the receiver's report on claims by approving those claims that are supported by substantial evidence and disapproving allowed claims that are not supported by substantial evidence. *Claims in a report that are not disapproved by the court within a period of 120 days following submission by the receiver shall be treated by the receiver as allowed claims.*
>
> (Emphasis added.)

10. We have rejected a strict application of the plain meaning rule when interpreting statutes. *Wold v. Progressive Preferred Ins. Co.*, 52 P.3d 155, 161 (Alaska 2002). We have observed that "even when a statute's language meaning seems plain on its face, ambiguity may arise if applying that meaning would yield anomalous conse-

quences," *Federal Deposit Ins. Corp. v. Laidlaw Transit, Inc.*, 21 P.3d 344, 351 (Alaska 2001), and consequently have adopted a sliding scale of interpretation under which "the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be." *Lakosh v. Alaska Dep't of Envtl. Conservation*, 49 P.3d 1111, 1117 (Alaska 2002).

11. AS 21.78.170(d) provides:

> If an objection is filed with the receiver and the receiver does not alter the denial of the claim as a result of the objection, the receiver shall ask the court for a hearing as soon as practicable and give notice of the hearing by first class mail to the claimant or the claimant's attorney and to any other person directly affected, not less than 10 nor more than 30 days before the date of the hearing.

language from subsection .170(d). Carpenter Financial is mistaken. It is correct that both subsections involve superior court oversight of claims decided by a receiver in an insurance liquidation. But even though subsection .293(b) specifies a particular number of days for superior court action, subsection .170(d) does not. Subsection .170(d) specifically refers to the appeal of claims the receiver has denied. Subsection .293(b) concerns the mandatory superior court review of claims already approved by the receiver. Subsection .170(d) does not specifically state exactly when the superior court must rule on a claim, but it does specifically apply to denied claims. The legislature enacted different review schemes for different categories of claims, distinguishing between those the receiver has approved and those the receiver has denied. The automatic approval-by-inaction rule only applies to claims that the receiver has already approved. Alaska Statute 21.78.170(d), not AS 21.78.293(b), controls appeals of claims the receiver has denied.

### C. The Standard of Review the Superior Court Applied

Carpenter Financial argues that the superior court was required to conduct an independent review of the merits of the claim but failed to do so, and instead merely determined whether substantial evidence supported the receiver's decision denying the claim. Carpenter Financial asserts that this error denied it due process.

In *Williams v. Wainscott* we ruled that the superior court was required to conduct a de novo evidentiary hearing for claims denied by a receiver in an insurance liquidation.[12] In support of its argument that the superior court applied the wrong standard, Carpenter Financial relies on a statement the superior court made at the conclusion of the three-day evidentiary hearing. The superior court stated: "The question is whether there's *substantial evidence* that the receiver's decision to disallow the $500,000 claim . . .—whether there was *substantial evidence* to support that conclusion to deny it." (Emphasis added.) Carpenter Financial asserts that these references to "substantial evidence" establish

that the superior court did not conduct the required independent review of Carpenter Financial's claims. The receiver responds that despite the superior court's "unfortunate" statement, the entire course of the three-day hearing and the superior court's ultimate ruling demonstrate that the court conducted a de novo hearing on the merits of Carpenter Financial's claims.

At the beginning of the hearing, before the parties made their opening statements, the superior court asked "What do the parties think of the burden of proof?" Counsel for Carpenter Financial replied that Carpenter Financial had "the burden of showing that the funds that were in question . . . were incurred on behalf of LICA and the funds were deposited—were made available to LICA, and I believe that the receiver bears the burden of proof as to the defenses that they allege." Counsel for the receiver agreed.

In his opening statement, Carpenter Financial's lawyer again discussed the standard of review for the superior court to apply:

> Just to make it clear, the parties agree that this is a trial de novo. . . . [T]he decisions of the receiver are entitled to no deference by this Court. It's very clear from . . . *Williams v. Wainscott* that that's the law in this state, and we believe the standard of proof and the receiver agrees that the standard of proof is whether our claims are supported by *substantial evidence,* and we believe that we will be able to establish that this . . . the money went to LICA and that the attorney's fees were incurred on behalf of LICA.

(Emphasis added.)

Carpenter Financial spent three days trying to prove that substantial evidence supported its claims. After closing arguments, the superior court issued an oral ruling from the bench. As we noted above, the court prefaced its ruling with its reference to "substantial evidence." But the court then proceeded to summarize the evidence it had heard over the prior three days, and concluded:

---

12. *Williams v. Wainscott,* 974 P.2d 975, 978 (Alaska 1999).

I find the [$500,000 surplus note] was re-paid. Mr. Carpenter took the money. I don't know where he put it, but he took it. Therefore, it's in his pocket. It's been repaid as a matter of law in this case, and . . . it is not a valid claim against the LICA estate.

The court's oral findings never mention the receiver's decision. The transcript establishes that the court gave no deference to the receiver's decision and instead made its own findings based on the evidence produced during the superior court hearing. Carpenter Financial points to nothing other than the court's brief reference to "substantial evidence" to support its argument that the court applied an improper standard of review. But the court's findings and the course of proceedings at the three-day hearing indicate that the court actually made its own findings and did not merely determine that substantial evidence supported the receiver's decision.[13]

The superior court did not apply the wrong standard of review and therefore committed no legal error. It conducted a de novo trial at which evidence was presented; it then made its own independent findings. The court consequently did not deprive Carpenter Financial of procedural due process.

Because we conclude that the superior court did not err, we do not reach the receiver's alternative argument that the surplus note can only be repaid from surplus funds above the minimum statutory deposit of $300,000—a surplus that LICA does not have.[14]

## IV. CONCLUSION

We therefore AFFIRM the decision of the superior court.

---

13. Carpenter Financial does not argue to this court that the superior court committed clear error in holding that the note was repaid and that Carpenter Financial's claim was invalid. We therefore do not consider whether the evidence supported the superior court's findings of fact.

14. Because we have concluded based on our independent judgment that the superior court did not apply the wrong standard of review, it is also unnecessary for us to consider the receiver's argument that Carpenter Financial waived the standard-of-review issue in the superior court, and that consequently we can review only for plain error.