OPINION
 

 MATTHEWS, Justice.
 

 A manufacturer of commercial trucks misrepresented the consequences of an oral agreement that it made with a potential parts and service dealer. The Unfair Trade Practices and Consumer Protection Act prohibits misrepresenting the consequences of an oral agreement. Dicta in our case law indicate
 
 *1044
 
 that the act only applies to transactions involving consumer goods and services. The question in this case is whether the act applies to a misrepresentation by a manufacturer of commercial trucks to a potential parts and services dealer. We answer "yes" because of the plain language of the act. The dicta were meant to highlight the distinction between transactions involving real estate and other transactions.
 

 FACTS AND PROCEEDINGS
 

 Western Star Trucks, Inc., manufactures commercial trucks. When its dealership in Fairbanks closed in 1999, the owners of Western Star Trucks in Alaska were left with no convenient place to buy parts or obtain warranty services. After receiving a number of concerned calls from truck owners, Western Star sent its employees Rick Jarchow and Mike Murphy to Fairbanks with instructions to "fix the problem." Murphy called on Dave Evans, formerly the service manager for the dealership in Fairbanks, who was then working for Big Iron Equipment Service, Inc. What followed was a series of meetings between Murphy, Jarchow, Evans, and the president of Big Iron, Mike Scott.
 

 These meetings resulted in an oral agreement, but what was agreed to was disputed. Evans and Scott claimed that Murphy and Jarchow promised that Big Iron would be the new Western Star parts and service dealer for Alaska. Murphy and Jarchow, on the other hand, claimed that they agreed that Big Iron was to be Western Star's interim warranty station to perform truck repairs and that Western Star would send Big Iron a dealer application packet.
 

 Relying on its understanding of the agreement, Big Iron proceeded to spend over $50,000 in order to assume dealership responsibilities. It also submitted a formal written dealership application. After a period in which Big Iron performed warranty work, Western Star rejected Big Iron's dealership application and awarded a dealership to another company.
 

 Big Iron sued Western Star for breach of contract, promissory estoppel, intentional or negligent misrepresentation, and unfair trade practices. After a bench trial, Superior Court Judge Mary E. Greene found for Western Star on the contract and promissory estoppel claims. But the court found that Big Iron had proved its claim for negligent misrepresentation, finding that Western Star "made a false representation when Murphy told Big Iron that they would receive paperwork that was just a 'formality.'" The court also found that this conduct violated AS 45.50.471(b)(14), a portion of the Unfair Trade Practices and Consumer Protection Act, which prohibits "representing that an agreement confers or involves rights, remedies or obligations which it does not confer or involve, or which are prohibited by law." The court found that Big Tron's actual damages were $58,120.36. The court added prejudgment interest to this amount, trebled the sum under the treble damages provision of the act,
 
 [1]
 
 and entered judgment in favor of Big Tron for $180,990.94 plus attorney's fees and costs.
 

 Western Star appeals from the court's conclusion that the act applies and the consequent trebling of actual damages.
 

 STANDARD OF REVIEW
 

 Issues of statutory interpretation are questions of law which this court reviews in its independent judgment.
 
 [2]
 
 Under this standard the court adopts the rule of law that is most persuasive in light of precedent, reason, and policy
 
 [3]
 

 DISCUSSION
 

 Western Star contends that the Unfair Trade Practices and Consumer Protection Act does not apply to a transaction between a commercial vehicle manufacturer and a potential dealer, and therefore Big Iron should recover only untrebled actual damages. Western Star's argument is that the general prohibitions of the act only apply to transactions involving consumer goods and services and that the subsection on which the
 
 *1045
 
 court relied, 471(b)(14), prohibiting misrepresentations of rights, remedies, and obligations, falls within this category.
 

 Big Tron responds on both procedural and substantive grounds. Procedurally, it contends that this argument was not raised in the trial court and therefore must be considered waived for purposes of appeal. Substantively, Big Iron argues that the superior court correctly applied the act to the transaction in question. We agree with Big Iron's substantive position, thus mooting consideration of its procedural point.
 

 AS 45.50.471 Is Not Limited to Cases Involving Consumer Goods or Services
 

 Western Star appeals only the trial court's finding that its conduct was a violation of the act. The court specifically found a violation of AS 45.50.471(b)(14), which defines as an unfair act: "representing that an agreement confers or involves rights, remedies or obligations which it does not confer or involve, or which are prohibited by law.
 
 [4]
 
 Western Star argues that this was wrong because the
 
 *1046
 
 statute does not apply to a transaction such as this that does not involve consumer goods or services. Big Iron argues that the plain meaning of the statute encompasses this situation and that there is no legislative history to suggest otherwise.
 

 When interpreting a statute, this court looks to three factors: the language of the statute, the legislative history, and the legislative purpose behind the statute.
 
 [5]
 
 This court has "rejected a mechanical application of the plain meaning rule, ... adopt[ing] a sliding scale approach instead.
 
 [6]
 
 Under this approach, "the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."
 
 [7]
 

 Western Star's argument is not supported by the literal language of the act. The act applies to all unfair or deceptive acts "in the conduct of trade or commerce,"
 
 [8]
 
 particularly if the act falls within the specific categories enumerated in subsection 471(b). But Western Star's argument is supported by language in two of our decisions, State v. First National Bank of Anchorage,
 
 [9]
 
 and Aloha
 
 *1047
 
 Lumber Corp. v. University of Alaska.
 
 [10]
 

 First National Bank involved an attempt by the state to apply the act to certain practices of a real estate subdivider. We held that "the sale of real property is not within the regulatory scope of the {act].
 
 [11]
 
 In reaching this conclusion we stated that the "act is directed at regulating practices relating to transactions involving consumer goods and services.
 
 [12]
 
 But the issue in First Notional Bank was not whether the act applied to transactions involving personal property or services used by businesses as distinct from personal property or services sold to consumers. Instead, our usage of the phrase "consumer goods and services" was merely a convenient but imprecise way of distinguishing sales and services involving real estate from those involving other property and services.
 

 We reached our conclusion in First National Bank based on the structure of subsection 471(b) and by reviewing authorities from other states. Using the principle of ejusdem generis we concluded that transactions centered on real estate were not included because most of the twenty-five enumerated prohibited transactions
 
 [13]
 
 involved " 'goodsg' or 'goods and services'" or were "commonly associated with consumer goods and services transactions." We stated: > 39
 

 Immediately following AS 45.50.471(a) is a list of twenty-five specific acts or practices which are expressly prohibited as "unfair methods of competition" and "deceptive acts or practices." AS 45.50.471(b). Of these, thirteen concern practices relating to transactions involving "goods" or "goods and services" generally.""" The remaining twelve deal with practices involving the sale of particular types of goods "N" or services,"" or relate to certain types of activities commonly associated with consumer goods and services transactions."N"® While subsection (b) makes clear that this list is not exclusive, none of the enumerated prohibited acts mentions real property. Nor do any other provisions of the Act suggest that the legislature intended the sale of real property to come within the Act's purview.
 
 [14]
 

 FN10 See AS 45.50.471(b)(1), (2), (3), (4), (5) (6), (7), (8), (9), (11), (13) and (19).
 

 FNL AS 45.50.471(b)(18) (resetting vehicle odometers); (21) (selling frozen meat as "fresh"); (25) (failure to comply with AS 45.50.800-45.50.850, the Alaska Gasoline Products Leasing Act).
 

 FNIZ AS 45.50.471(b)(17) (excess charges for warranty repairs); (23) (failure to comply with AS 45.45.130-45.45.240, regulating motor vehicle repairs); (24) (prohibiting certain practices in connection with counseling, consulting or arranging for future services relating to the disposition of a body upon death).
 

 FNI3B AS 45.50.471(b)(10) (misrepresentations regarding price reductions); (14) (misrepresenting legal rights or obligations in an agreement); (15) (misrepresenting the need for parts, replacement or repair service); (16) (misrepresenting the authority of an agent or representative to negotiate the terms of a consumer transaction); (20) (selling or offering to sell a right of participation in a chain distributor scheme); (22) (failure to comply with AS 45.02.350, regulating the sale of goods or services by door-to-door solicitation}.
 

 We note that twelve of the thirteen subsections of 471(b) mentioning "goods" or "goods and services," as set out in footnote 10 quoted above, could apply to commercial goods and services as readily as to those offered to consumers. The only exception would be subsection (19) referring to chain referral sales plans directed to consumers. Likewise, as to the four subsections that do not mention goods or services but are general in application, three-(10), (14), and (15)-would apply to commercial goods and services as well as to consumer goods and services. Only subsection (16) in this category is limited to consumer transactions.
 
 [15]
 
 Thus, the ejusdem generis approach employed in First National Bank does not serve to distin
 
 *1048
 
 guish between transactions based on commercial and consumer products or services.
 

 In First National Bank we relied on a New Jersey case, Neveroski v. Blair.
 
 [16]
 
 The New Jersey court had applied a ejusdem generis approach to the New Jersey Consumer Fraud Act to conclude that a misrepresentation in connection with the sale of real property was not covered under the act. As quoted in First National Bank, the New Jersey court concluded that the act was directed only at regulating transactions involving "products and services sold to consumers in the popular sense.
 
 [17]
 
 It appears that the New Jersey court used language relating to consumer transactions advisedly because the New Jersey act used the word "merchandise," which was defined in the act to include "anything offered, directly or indirectly, to the public for sale.
 
 [18]
 
 But there is nothing similar in the Alaska act that could serve to limit the Alaska act to goods and services offered to the public. We also noted in First National Bank that the acts of several states involving deceptive merchandising practices specifically included real estate whereas the Alaska act does not.
 
 [19]
 
 Both the New Jersey case and the statutes of other states cited in our First National Bank discussion support the proposition that real estate transactions were not intended to be covered by the Alaska act, but neither would support a conclusion that the Alaska act covered consumer but not commercial non-real estate transactions.
 

 Aloha Lumber involved the sale of standing timber on University land.
 
 [20]
 
 A prospective buyer brought a claim under the act against the University. We held that the act did not apply to a sale of standing timber because standing timber is real property not a consumer good.
 
 [21]
 
 In reaching this conclusion we did not undertake a new analysis of AS 45.50.471, but relied on First National Bank.
 
 [22]
 
 As in First National Bank, the issue in Aloka Lumber was only whether transactions centered on real property were covered by the act.
 

 While First National Bank and Aloha Lumber clearly hold that the act does not apply to transactions involving real estate, we do not think that these cases should be interpreted to bar the application of the act to transactions between businesses involving services or commercial or consumer personal property. As noted, many of the enumerated categories of subsection (b) apply as readily to such transactions. Further, the New Jersey case on which we relied for its ejusdem generis approach in First National Bank and the statutory examples we cited were focused on the distinction between real estate transactions on the one hand and transactions not involving real estate on the other. They do not support making a distinction under the Alaska act between consumer and commercial transactions.
 

 The legislative history of the act indicates that while consumer protection was the dominant motive underlying the act, the act was not intended to be limited to consumer transactions. As first enacted in 1970, section A71 contained thirteen enumerated prohibitions that correspond to the first thirteen subsections in current subsection 471(b).
 
 [23]
 
 The House Judiciary Committee Report that accompanied the 1970 bill that became the act states that the bill is "based on legislation developed in large part by the Federal Trade Commission, [and] is designed to meet the increasing need in Alaska for the protection of consumers as well as honest businessmen from the depredations of those persons employing unfair or deceptive trade practices.
 
 [24]
 
 The model legislation mentioned in the committee report is not further identi
 
 *1049
 
 fied, but the prohibitions of the 1970 act closely resemble those in the Uniform Deceptive Trade Practices Act of 1966 promulgated by the National Conference of Commissioners on Uniform State Laws.
 

 The Alaska act was amended in 1974. Current prohibitions 14 through 20 were added and subsection 471(a) was revised to parallel the declaration of unlawfulness contained in the Federal Trade Commission Act.
 
 [25]
 
 Also added was current section .545 requiring that in interpreting section 471 due consideration and great weight should be given to interpretations of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts.
 
 [26]
 
 The governor's transmittal letter concerning the 1974 amendments states in part:
 

 The language 'of the present Act is amended to conform to the language of the Federal Trade Commission Act, and the interpretation provision is provided to enable the Attorney General and the courts of the state to utilize the body of law created by the Federal Trade Commission. The Federal Trade Commission and the Conference of Commissioners on Uniform State Laws have recommended the use of such conforming language so that the consumer and the businessman are provided with uniformity in unfair trade laws.
 
 [27]
 

 Both the committee report relating to the 1970 act and the governor's transmittal letter with respect to the 1974 amendments emphasize the need to protect consumers, but they do not state that consumers are the only group protected by the act. The 1970 Judi-clary Committee Report includes "honest businessmen" with consumers as those in need of protection from the "depredations" of those employing unfair or deceptive trade practices.
 
 [28]
 
 The Uniform Deceptive Trade Practices Act on which the 1970 act appears to have been modeled clearly is not limited to the protection of consumers. The prefatory note to the Uniform Act makes it clear that the act was also intended to protect businesses from deceptive trade practices by other businesses.
 
 [29]
 
 Further, it is clear that 15
 
 *1050
 
 U.S.C. § 45(a)(1), the Federal Trade Commission Act, is not limited to consumer transactions.
 
 [30]
 
 Subsection .471(a) should likewise not be so limited since subsection .471(a) closely parallels the language of the federal act and the legislature has specifically provided that due consideration and great weight should be given to interpretations of the federal act.
 

 We thus conclude that no sufficient reason exists for departing from the literal language of the act in connection with commercial transactions not involving real estate. Consequently, we affirm the judgment of the superior court.
 

 AFFIRMED.
 

 [1]
 

 . AS 45.50.531(a).
 

 [2]
 

 . In re Life Ins. Co. of Alaska, 76 P.3d 366, 368 (Alaska 2003).
 

 [3]
 

 . Id.
 

 [4]
 

 . AS 45.50.471(a) and (b) provide:
 

 (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.
 

 (b) The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts:
 

 (1) fraudulently conveying or transferring goods or services by representing them to be those of another;
 

 (2) falsely representing or designating the geographic origin of goods or services;
 

 (3) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services;
 

 (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
 

 (5) representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, secondhand, or seconds;
 

 (6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
 

 (7) disparaging the goods, services, or business of another by false or misleading representation of fact;
 

 (8) advertising goods or services with intent not to sell them as advertised;
 

 (9) advertising goods or services with intent not to supply reasonable expectable public demand, unless the advertisement prominently discloses a limitation of quantity;
 

 (10) making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
 

 (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services;
 

 (12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged;
 

 '(13) failing to deliver to the customer at the time of an installment sale of goods or services, a written order, contract, or receipt setting out the name and address of the seller and the name and address of the organization that the seller represents, and all of the terms and conditions of the sale, including a description of the goods or services, which shall be stated in readable, clear, and unambiguous language;
 

 (14) representing that an agreement confers or involves rights, remedies or obligations which it does not confer or involve, or which are prohibited by law;
 

 (15) knowingly making false or misleading statements concerning the need for parts, replacement, or repair service;
 

 (16) misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;
 

 (17) basing a charge for repair in whole or in part on a guaranty or warranty rather than on the actual value of the actual repairs made or work to be performed on the item without stating separately the charges for the work and the charge for the guaranty or warranty, if any;
 

 (18) disconnecting, turning back or resetting the odometer of a vehicle to reduce the number of miles indicated;
 

 (19) using a chain referral sales plan by inducing or attempting to induce a consumer to enter into a contract by offering a rebate, discount, commission, or other consideration, contingent upon the happening of a future event, on the condition that the consumer either sells, or gives information or assistance for the purpose of leading to a sale by the seller of the same or related goods;
 

 (20) selling or offering to sell a right of participation in a chain distributor scheme;
 

 (21) selling, falsely representing or advertising meat, fish or poultry which has been frozen as fresh food;
 

 (22) failing to comply with AS 45.02.350;
 

 (23) failing to comply with AS 45.45.130-45.45.240;
 

 
 *1046
 
 (24) counseling, consulting or arranging for future services relating to the disposition of a body upon death whereby certain personal property, not including cemetery lots and markers, will be furnished or the professional services of a funeral director or embalmer will be furnished, unless the person receiving money or property deposits the money or property, and money or property is received, within five days of its receipt, in a trust in a financial institution whose deposits are insured by an instrumentality of the federal government designating the institution as the trustee as a separate trust in the name only of the person on whose behalf the arrangements are made with a provision that the money or property may only be applied to the purchase of designated merchandise or services and should the money or property deposited and any accrued interest not be used for the purposes intended on the death of the person on whose behalf the arrangements are made, all money or property in the trust shall become part of that person's estate; upon demand by the person on whose behalf the arrangements are made, all money or property in the trust including accrued interest, shall be paid to that person; this paragraph does not prohibit the charging of a separate fee for consultation, counseling or arrangement services if the fee is disclosed to the person making the arrangement; any arrangement under this paragraph which would constitute a contract of insurance under AS 21 is subject to the provisions of AS 21;
 

 (25) failing to comply with the terms of AS 45.50.800-45.50.850 (Alaska Gasoline Producis Leasing Act);
 

 (26) failing to comply with AS 45.30 relating to mobile home warranties and mobile home parks;
 

 (27) failing to 14.48.060(b)(13); comply with AS
 

 (28) dealing in hearing aids and failing to comply with AS 08.55;
 

 (29) violating AS 45.45.910(a), (b), or (c);
 

 (30) failing to comply with AS 45.50.473;
 

 (31) violating the provisions of AS 45.45.400;
 

 (32) knowingly selling a reproduction of a piece of art or handicraft that was made by a resident of the state unless the reproduction is clearly labeled as a reproduction; in this paragraph, "reproduction" means a copy of an original if the copy is
 

 (A) substantially the same as the original; and
 

 (B) not made by the person who made the original;
 

 (33) violating AS 08.66 (motor vehicle dealers);
 

 (34) violating AS 08.66.200-08.66.350 (motor vehicle buyers' agents);
 

 (35) violating AS 45.63 (telephonic solicitations);
 

 (36) violating AS 45.68 (charitable solicitations);
 

 (37) violating AS 45.50.474 (on board promotions);
 

 (38) referring a person to a dentist or a dental practice that has paid or will pay a fee for the referral unless the person making the referral discloses at the time the referral is made that the dentist or dental practice has paid or will pay a fee based on the referral;
 

 (39) advertising that a person can receive a referral to a dentist or a dental practice without disclosing in the advertising that the dentist or dental practice to which the person is referred has paid or will pay a fee based on the referral if, in fact, the dentist or dental practice to which the person is referred has paid or will pay a fee based on the referral.
 

 (40) violating AS 45.50.477(a)-(c);
 

 (41) failing to comply with AS 45.50.475;
 

 (42) violating AS 45.35 (lease-purchase agreements);
 

 (43) violating AS 45.25.400-45.25.590 (motor vehicle dealer practices);
 

 (44) violating AS 45.66 (sale of business opportunities).
 

 [5]
 

 . Muller v. BP Exploration (Alaska) Inc., 923 P.2d 783, 787 (Alaska 1996).
 

 [6]
 

 . Id. at 787-88.
 

 [7]
 

 . Id.
 

 [8]
 

 . AS 45.50.471(a).
 

 [9]
 

 . 660 P.2d 406 (Alaska 1982).
 

 [10]
 

 . 994 P.2d 991 (Alaska 1999).
 

 [11]
 

 . 660 P.2d at 414.
 

 [12]
 

 . Id. at 412.
 

 [13]
 

 . The list has since been expanded to forty-six.
 

 [14]
 

 14. Id. at 412-13.
 

 [15]
 

 . The express limitation to consumers in subsection (16) suggests that transactions falling within the other subsections were not intended to be so limited.
 

 [16]
 

 . 358 A.2d 473, 480 (N.J.Super.1976).
 

 [17]
 

 . Id. at 480 (quoted in First National Bank, 660 P.2d at 413).
 

 [18]
 

 . Id. at 479 (quoted in First National Bank, 660 P.2d at 413).
 

 [19]
 

 . First National Bank, 660 P.2d at 413 n. 14.
 

 [20]
 

 . 994 P.2d 991 (Alaska 1999).
 

 [21]
 

 . Id. at 1002.
 

 [22]
 

 . Id.
 

 [23]
 

 . Ch. 246, § 2, SLA 1970.
 

 [24]
 

 . Judiciary Committee Report on HCSCS for Senate Bill No. 352, House Journal Supp. No. 10 at 1, 1970 House Journal 744 (emphasis added).
 

 [25]
 

 . 15 U.S.C. § 45(a)(1) provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."
 

 [26]
 

 . AS 45.50.545 provides: "In interpreting AS 45.50.471 due consideration and great weight should be given the interpretation of 15 U.S.C. § 45(a)(1) (§ 5(a)(1) of the Federal Trade Commission Act)."
 

 [27]
 

 27. 1974 House Journal 122, Letter of Governor William A. Egan to the Honorable Tom Fink, Speaker of the House.
 

 [28]
 

 . House Journal Supp. No. 10 at 1.
 

 [29]
 

 . The prefatory note states in part as follows:
 

 The tort action for deceptive trade practices or "passing off"" developed from the common-law action for trademark infringement. It embraced imitation of fanciful and coined marks and names as well as those which had developed trade significance but did not qualify technically as trademarks. The action was historically available whenever one trader diverted patronage from a rival by falsely representing that his goods were the goods of his rival.
 

 The prefatory note goes on to observe that this doctrine was developed largely in the federal courts as federal common law. When federal common law was abolished in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal judges were obliged to rely on state law which had "marked time" and was poorly developed. Thus one reason for the Uniform Deceptive Trade Practices Act was to reinstate the causes of action available to businesses against other businesses that had developed as a matter of federal common law but were effectively extinguished by the Erie doctrine. 74 U.L.A. 265 (1985) (prefatory note to Uniform Deceptive Trade Practices Act).
 

 The prefatory note also indicates that another purpose of the proposed act was to alter the common law doctrine under which "a businessmen was not generally subject to common law Liability to a fellow tradesman for false or deceptive advertisement." Id. at 266.
 

 The comment to section 2(a)(5) of the Deceptive Trade Practices Act corresponding to subsection .471(b)(4) of the Alaska act refers to an Alaska Territorial case, Alaska Sales & Service, Inc. v. Rutledge, 128 F.Supp. 1 (D.Alaska 1955), in which the court held that a complaint by a franchised dealer against a nonfranchised seller of automobiles that the latter was misrepresent ing his authority stated a valid cause of action for unfair competition. Similarly, other sections of the commentary in the Uniform Act refer to cases between businesses as illustrative examples of the conduct intended to be prohibited by the act. See, e.g., Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641 (3d Cir.1958); Triangle Publications v. Rohrlich, 167 F.2d 969 (2d Cir.1948); L.E. Waterman Co. v. Gordon, 72 F.2d 272 (2d Cir.1934); Maytag Co. v. Meadows Mfg. Co., 35 F.2d 403 (7th Cir.1929); Burlington Mills Corp. v. Roy Fabrics, 91 F.Supp. 39 (S.D.N.Y.1950),
 
 *1050
 
 aff'd per curiam, 182 F.2d 1020 (2d Cir.1950); Mayfair Farms, Inc. v. Socony Mobil Oil Co., 68 N.J.Super. 188, 172 A.2d 26 (1961); Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 190 N.Y.S.2d 977, 161 N.E.2d 197 (N.Y.1959).
 

 [30]
 

 . "The federal courts have repeatedly and historically applied [the provisions of 15 U.S.C. § 45(a)(1)] to situations not involving consumers." Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 656 A.2d 1009, 1020 (1995) (citing Yamaha Motor Co., Ltd. v. Federal Trade Comm'n, 657 F.2d 971 (8th Cir.1981), cert. denied sub nom. Brunswick Corp. v. Federal Trade Comm'n, 456 U.S. 915, 102 S.Ct. 1768, 72 LEd.2d 174 (1982); Sandura Co. v. Federal Trade Comm'n, 339 F.2d 847 (6th Cir.1964); American Tobacco Co. v. Federal Trade Comm'n, 9 F.2d 570 (2d Cir.1925), aff'd, 274 U.S. 543, 47 S.Ct. 663, 71 L.Ed. 1193 (1927)).