Diane ROBERSON, on behalf of herself
and all others similarly situated,
Petitioner,

v.

SOUTHWOOD MANOR ASSOCIATES,
LLC, Respondent.

No. S–13659.

Supreme Court of Alaska.

April 8, 2011.

James J. Davis, Jr., Goriune Dudukgian,
and Ryan Fortson, Northern Justice Project,
Anchorage, for Petitioner.

David Karl Gross, Birch Horton Bittner &
Cherot, Anchorage, for Respondent.

Before: CARPENETI, Chief Justice,
FABE, WINFREE, and STOWERS,
Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

A mobile home park tenant accrued late
charges for failing to pay her space rent on
time. The park owner sued the tenant for
back rent and late charges. The tenant filed
class action counterclaims. One counter-
claim asserted that the late charges violated
Alaska's Unfair Trade Practices and Con-
sumer Protection Act (UTPA). The superior
court granted a motion to dismiss the ten-
ant's UTPA counterclaim, concluding that
the UTPA does not apply to residential leas-
es. We granted the tenant's petition for
review to consider this question of law, and
we now affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Southwood Manor Associates, LLC (South-
wood) owns and operates a mobile home park
in Anchorage. Diane Roberson was a tenant
at the park—renting space, not a mobile
home—from September 1997 to August 2008.

Roberson's rent was between $385 and $400 per month. Roberson's lease agreement also provided that she would pay "a late charge of Fifty Dollars ($50.00) for each month's rent that is paid more than FIVE (5) DAYS after it falls due" and "Three Dollars ($3.00) per day after the initial charge until the rental is paid in full." (Emphasis in original.)

Roberson was late with rent payments and she accrued late charges during her tenancy. Southwood filed a complaint against Roberson seeking eviction, back rent, late charges, and other damages. Roberson filed an answer and class action counterclaims alleging in part that the late charges violated the UTPA.[1] Roberson sought a declaration that Southwood's late charges were illegal, an injunction, and damages.

Southwood moved to dismiss Roberson's UTPA counterclaim for failure to state a claim on which relief could be granted, and Roberson moved for partial summary judgment to establish the validity of her UTPA counterclaim. The superior court granted Southwood's motion to dismiss and denied Roberson's motion for partial summary judgment. The court held that based on both the plain language of AS 45.50.471 and this court's decision in *State v. First National Bank of Anchorage*,[2] the UTPA does not apply to residential leases. The superior court concluded that "it is not this Court's role to adopt [Roberson's] arguments by interpreting a clearly written statute in a manner inconsistent with the Legislature's intent."

We granted Roberson's petition for review to decide whether AS 45.50.471 applies to residential leases.

**III. STANDARD OF REVIEW**

 We review de novo a superior court's decision to grant a motion to dismiss.[3] "Because motions to dismiss are disfavored, '[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief.'"[4] Issues of statutory interpretation present questions of law warranting independent review.[5] We "adopt[ ] the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

**IV. DISCUSSION**

 Alaska Statute 45.50.471(a) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful." Alaska Statute 45.50.471(b) provides a non-exclusive list of acts or practices that are unfair or deceptive.[7] The list does not mention disputes between landlords and tenants.[8] We therefore start with a review of our cases touching on the UTPA's application to real estate transactions.

In *First National Bank* we held that "the sale of real property is not within the regulatory scope of the [UTPA]."[9] In reaching our decision we observed that "the entire thrust of the [UTPA] is directed at regulating practices relating to transactions involving consumer goods and services."[10] We further explained that "[w]hile subsection (b) makes clear that this list is not exclusive, none of the enumerated prohibited acts mentions real property. Nor do any other provisions of the

1. AS 45.50.471–.561.

2. 660 P.2d 406, 414 (Alaska 1982) (holding UTPA does not apply to real property sales).

3. *Adkins v. Stansel*, 204 P.3d 1031, 1033 (Alaska 2009) (quoting *Varilek v. City of Houston*, 104 P.3d 849, 851 (Alaska 2004)).

4. *Id.* (quoting *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006)).

5. *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1048 (Alaska 2004) (citing *In re Life Ins. Co. of Alaska*, 76 P.3d 366, 368 (Alaska 2003)).

6. *Id.* (citing *In re Life Ins. Co. of Alaska,* 76 P.3d at 368).

7. When Southwood filed suit, subsection (b) contained a non-exclusive list of 51 prohibited practices. Former AS 45.50.471(b) (2008).

8. *See* former AS 45.50.471(b)(1)-(51) (2008).

9. 660 P.2d at 414.

10. *Id.* at 412.

[UTPA] suggest that the legislature intended the sale of real property to come within the [UTPA's] purview." [11] We discussed relevant parts of our *First National Bank* holding on three later occasions.

In *Barber v. National Bank of Alaska* we held that the UTPA did not apply to mortgages.[12] There the bank initiated non-judicial foreclosure proceedings on Barber's residential property after he failed to make mortgage payments.[13] Barber sued the bank and one of its employees, alleging a UTPA violation for failure to postpone the foreclosure sale and for certain misstatements the employee made concerning the foreclosure proceedings.[14] We explained that in *First National Bank* we "held that the sale of real property is not governed by the [UTPA]." [15] Because we determined a mortgage is more akin to a real property sale than a good or service, we held that the UTPA did not apply to Barber's mortgage as a matter of law.[16]

In *Aloha Lumber Corp. v. University of Alaska* we held that the UTPA did not apply to the sale of standing timber because timber is real property, not a consumer good.[17] In that case Aloha Lumber challenged the University's sale of timber to a third party as unfair and anti-competitive in violation of the UTPA.[18] We noted *First National Bank*'s holding that the UTPA's thrust "is directed at regulating practices relating to transactions involving consumer goods and services." [19] We determined that standing timber is not a consumer good because "[c]onsumer goods are generally understood to mean goods 'used or bought for use primarily for personal, family, or household purposes.' " [20]

In *Western Star Trucks, Inc. v. Big Iron Equipment Service, Inc.* we held that the UTPA governs business-to-business transactions.[21] A commercial truck manufacturer misrepresented the consequences of an oral agreement it made with a parts and service dealer.[22] The dealer sued under the UTPA.[23] Distinguishing the commercial transactions in *First National Bank* and *Aloha Lumber*, we explained that "sales and services involving real estate [are distinct] from those involving other property and services" and that "real estate transactions were not intended to be covered by the [UTPA]." [24] We stated "*First National Bank* and *Aloha Lumber* clearly hold that the [UTPA] does not apply to transactions involving real estate." [25]

Our cases reflect that the relevant distinction in *First National Bank* was not between real property sales and other transactions involving real property, but rather between real property transactions and non-real property transactions, specifically those involving consumer goods.[26] Southwood argues that a residential lease should be considered a real

---

11. *Id.* at 413.

12. 815 P.2d 857, 861 (Alaska 1991).

13. *Id.* at 859–60, 863.

14. *Id.* at 860.

15. *Id.* at 861 (citing *First Nat'l Bank*, 660 P.2d at 413).

16. *Id.* We also rejected Barber's alternative UTPA argument, that the bank primarily engaged in "debt collection services." *Id.* at 861 (citing *First Nat'l Bank*, 660 P.2d at 413).

17. 994 P.2d 991, 1002 (Alaska 1999).

18. *Id.* at 994–95, 1002.

19. *Id.* at 1002 (quoting *First Nat'l Bank*, 660 P.2d at 412).

20. *Id.* (quoting AS 45.09.109).

21. 101 P.3d at 1047–48.

22. *Id.* at 1047.

23. *Id.* at 1048.

24. *Id.* at 1051, 1052.

25. *Id.* at 1052.

26. *See Aloha Lumber*, 994 P.2d at 1002 (agreeing with superior court that "because standing timber is not a 'consumer good,' but real property, the timber sales at issue are beyond the scope of the [UTPA]"). And as we explained in *First National Bank*, "consumer" status is not contingent upon whether an individual buys or leases. 660 P.2d at 413–14 (quoting former AS 45.50.561(6) (1982)) (current version at AS 45.50.561(a)(4)) (noting that "consumer" is statutorily defined as "a person who seeks or acquires goods or services by lease or purchase") (emphasis omitted).

property transaction—and therefore outside the UTPA's scope based on *First National Bank*—because a residential lease is functionally equivalent to a real property sale. Roberson disagrees, arguing the UTPA should apply to residential leases because a modern tenant does not have a real property interest, but rather is a consumer of housing services. According to Roberson, "American jurisprudence has come to recognize that the traditional notions of landlord-tenant relations ... are outdated when it comes to modern landlord-tenant transactions" and "[t]his trend has led most courts around the country to hold that residential landlords are covered by state consumer protection laws, just like any other provider of consumer services."

But Roberson's authority, read in context, does not provide much guidance for interpreting a consumer protection statute such as the UTPA. The primary cases cited concern whether an implied warranty of habitability should be recognized.[27] Roberson goes on to discuss cases from other states where the courts specifically held that the consumer protection statutes apply to residential leases, but those cases are also distinguishable because those states' consumer protection statutes specifically include real property, and the UTPA does not.[28]

■ Southwood's argument is more persuasive. Real property leases are similar to real property sales in significant ways. Perhaps most importantly, leases generally include a transfer of an interest:

> In every lease, the property interests ... are shared between the landlord and the tenant. The landlord retains the ownership of the property as a future interest in the form of a reversion. The tenant obtains the present possessory interest in the leased property for the duration of the lease.[29]

Because the UTPA does not apply to real property transactions, and a lease is a real property transaction because it contains a transfer of the property's interest, the statute does not apply to residential leases.[30]

Two legislative actions buttress our conclusion. First, we note that the legislature changed the UTPA after our decision in *First National Bank*. When that case was decided, AS 45.50.471(b) listed 25 prohibited acts or practices covered by the UTPA;[31] the legislature has since expanded the list significantly.[32] For example the legislature added subsection .471(b)(52) in 2007, which prohibits a variety of unfair mortgage lending activities.[33] By adding subsection (b)(52),

---

**27.** *See Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1072–73 (D.C.Cir.1970); *Green v. Superior Court*, 10 Cal.3d 616, 111 Cal.Rptr. 704, 517 P.2d 1168, 1170 (1974).

**28.** *See W. Star Trucks*, 101 P.3d at 1052 (citing *First Nat'l Bank*, 660 P.2d at 413 n. 14) ("[T]he acts of several states involving deceptive merchandising practices specifically included real estate whereas the [UTPA] does not."); *see also* AS 45.50.471(b).

**29.** 4 THOMPSON ON REAL PROPERTY § 39.01, at 558 (David A. Thomas ed., 2004); *see* 2 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 16.02[3][a], at 16–13 (Michael Allan Wolf ed., 2009) ("A lease transfers an 'estate' to the tenant, which gives the tenant a 'possessory' interest in the premises." (citations omitted)); *see also* Thomas, above, § 39.02(a), at 561 ("[A] lease creates an interest in land."). We have also recognized that a lease typically conveys an interest in property. *See N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 636 (Alaska 2000) (quoting BLACK'S LAW DICTIONARY 615 (abr. 6th ed.1990)); *see also Schaible v. Fairbanks Med. & Surgical Clinic, Inc.*, 531

P.2d 1252, 1262 (Alaska 1975) (Connor, J., dissenting) (citing *Smalley v. Juneau Clinic Bldg. Corp.*, 493 P.2d 1296, 1299 (Alaska 1972)) ("In Alaska a lease is a conveyance of an interest in real property.").

**30.** By clarifying that a transfer in interest is required to be considered a real property transaction, we ameliorate Roberson's concern that a broad reading of "transactions involving real property" would preclude a UTPA claim for such deceptive practices as a "home construction scam," because such practices do not involve an interest transfer.

**31.** *First Nat'l Bank*, 660 P.2d at 412–13.

**32.** The list contained 51 prohibited acts or practices when Southwood first filed its complaint. Former AS 45.50.471(b) (2008). The list now extends to 57 prohibited acts or practices. AS 45.50.471(b).

**33.** Ch. 50, § 2, SLA 2007. Subsection .471(b)(52) makes it a violation of the UTPA to engage in any act or practice prohibited in the

the legislature responded to our holding in *Barber* and chose to include certain mortgage practices within the UTPA. But unlike in the mortgage context, the legislature has not amended AS 45.50.471(b) to include real estate transactions—including residential leases—despite our clear statement in *Western Star Trucks* that real estate transactions fall outside the UTPA's scope.

Second, our interpretation of the UTPA is informed by the legislature's creation of the Uniform Residential Landlord and Tenant Act (URLTA).[34] The URLTA's purpose is to "simplify, clarify, modernize, and revise the law governing the rental of dwelling units and the rights and obligations of landlord and tenant." [35] In achieving this purpose, the legislature specifically regulates mobile home park leases.[36] Although we do not need to decide whether the URLTA sufficiently regulates landlord tenant relationships to exempt residential leases from the UTPA,[37] the existence of the URLTA is consistent with our interpretation that the legislature did not intend to include real estate transactions within the scope of the UTPA.

## V. CONCLUSION

We AFFIRM the superior court's decision.

CHRISTEN, Justice, not participating.

---

Mortgage Lending Regulation Act. *See* AS 06.60.340.

**34.** *See* AS 34.03.010–.380.

**35.** AS 34.03.010(b)(1).

**36.** AS 34.03.040(c).

**37.** *See* AS 45.50.481(a) (stating UTPA does not apply to "an act or transaction regulated under laws administered by the state . . . unless the law regulating the act or transaction does not prohibit the practices declared unlawful" in UTPA).